THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GORDON W. PUTNAM, Appellant.

Third Department, July 30, 1987

## APPEARANCES OF COUNSEL

*O'Connell & Aronowitz (Stephen R. Coffey, Thomas F. Gleason* and *Salvatore D. Ferlazzo* of counsel), for appellant.

*Sol Greenberg, District Attorney (Cheryl F. Coleman* of counsel), for respondent.

## OPINION OF THE COURT

KANE, J.

In early October 1985, defendant approached one of his part-time employees, Gerald Batcher, with an offer to forgive some outstanding loans made by defendant to Batcher, together with an additional payment of $2,500, if Batcher would kill his brother-in-law, John Macri. Previously, defendant had purchased a $36,000 term life insurance policy on Macri's life,

naming himself as beneficiary under the guise of providing some security for an executory agreement whereby Macri was to acquire an interest in defendant's business. Since the time for consummation of this agreement was imminent, defendant informed Batcher that he wanted Macri killed the weekend of October 14, 1985, because at that time he could arrange a suitable alibi. Batcher thereupon contacted the State Police who arranged, with Batcher's consent, to record telephone conversations between Batcher and defendant and a conversation between Batcher and defendant in Batcher's automobile. A transcript of the conversations on these tapes was provided to the jury as they listened to the recordings during trial. This evidence detailed the arrangement between defendant and Batcher for doing away with Macri, following which defendant provided Batcher with a knife to be used to kill Macri and the further sum of $500 as a final payment for the killing. Batcher then gave the knife and the $500 to the State Police, who arranged for Batcher to meet with defendant again to report the details of Macri's death. This meeting, also recorded, transpired, following which defendant was apprehended by nearby State Police officers and charged with the crimes for which he was convicted.

On this appeal, defendant contends that unredacted statements in the tape recordings made by defendant concerning his participation in uncharged crimes were improperly before the jury and deprived defendant of a fair trial (see, People v Ely, 68 NY2d 520; People v Crandall, 69 NY2d 111; People v Ward, 62 NY2d 816). The unredacted portions relate to defendant's descriptions of placing a noose around another person's neck in an attempt to collect $390 and the act of administering what he perceived to be an overdose of insulin to an elderly woman by the name of MacMurray, who was a life tenant in a dwelling owned by defendant. The prosecution contends that this evidence is admissible to show defendant's intent that he, as one capable of murder himself, truly wanted his brother-in-law killed and the intended result was not a hoax or "fantasy", as suggested by defendant.

The introduction of evidence of uncharged crimes is permissible to establish defendant's intent if (1) that evidence is probative of the crime charged and (2) its probative value outweighs its potential for prejudice to defendant (People v Ely, supra; People v Ventimiglia, 52 NY2d 350; People v Molineux, 168 NY 264). Here, the recital by defendant of his previous "bad acts" was prompted by the question from

Batcher, "Have you ever killed anybody?" Thus, there is presented the additional issue of whether that question was relative to the conversation between defendant and Batcher as they planned the murder of Macri, or an independent effort by Batcher to have defendant incriminate himself. In other words, was this evidence of defendant's prior conduct, although obviously prejudicial to him, necessary for a full comprehension of the recorded conversations seeking to establish proof, beyond a reasonable doubt, of defendant's intent to commit the crimes for which he was indicted *(see, People v Ely, supra,* at 531).

■ Viewing the transcript of this conversation in its entirety, and considering the basis for the objection offered by defendant, in our view, although close, the circumstances support the conclusion that the objectionable portion was probative of the issue of intent and outweighs any prejudice to defendant *(see, People v Roides,* 124 AD2d 967, *lv denied* 69 NY2d 886; *People v Lawson,* 124 AD2d 853, *lv denied* 69 NY2d 829). Throughout preliminary proceedings, and in his opening statement, it was defendant's contention that he never intended to have his brother-in-law killed and that the entire matter was a "joke" or a "hoax". Thus, under proper instructions, as given by County Court, evidence probative of the issue of intent was critical to the People's case. Therefore, this proof of defendant's prior "bad acts" falls within one of the permissible exceptions *(see, People v Ventimiglia, supra).*

■ However, our review of the sufficiency of the evidence compels the conclusion that there is insufficient evidence to sustain the conviction of attempted murder in the second degree. The record demonstrates that the only acts committed to effect the murder itself were the "agreement" between defendant and Batcher for the murder to occur during a certain weekend in the future and defendant's supplying Batcher with a knife to be used as the murder weapon, together with the payment to Batcher of a sum of money as his fee for the killing. Thus, the evidence shows nothing beyond the preparation stage, which is insufficient to support a conviction for an attempt *(see, People v Werblow,* 241 NY 55, 63). The circumstances presented are similar to those presented in *People v Rizzo* (246 NY 334, 337), where the evidence which was found insufficient established that the defendants, before apprehension, procured firearms and an automobile and traveled in the vehicle to various places where they expected to find the intended victim on the day of a planned

robbery. Since, in our view, the record fails to demonstrate the legal requirements "that defendant committed an act or acts that carried the project forward within dangerous proximity to the criminal end to be attained" *(People v Warren,* 66 NY2d 831, 832; *see also, People v Rizzo, supra),* the conviction for attempted murder in the second degree cannot stand and that count of the indictment should be dismissed.

■ Furthermore, there were errors committed during the trial which mandate that there be a reversal of the conviction for conspiracy in the second degree and a new trial on that charge, notwithstanding the convincing evidence of defendant's guilt of that crime.

First, defendant contends that error was committed when the People were permitted to impeach their own witnesses' credibility on redirect examination. The impeaching questions by the prosecutor followed testimony by Macri, who stated on cross-examination that Batcher possessed a grudge against defendant arising out of some dealings between them a few years before. In attacking these statements made by Macri, the questions propounded by the prosecutor were, in effect, an attempt to establish the foundation for either a recent fabrication or a motive, and thus were improper *(see,* Richardson, Evidence § 493 [Prince 10th ed]). Moreover, if the actions of the People were an attempt at impeachment, they violated CPL 60.35 (1) *(see, People v Wright,* 41 NY2d 118, 121; *People v McNair,* 59 AD2d 787; *cf., People v Warren,* 108 AD2d 766). We also note that in the course of the inquiry as to Macri's testimony, there was an impermissible attack upon the integrity of defense counsel by suggesting that the information furnished by Macri had been contrived by defense counsel *(see, People v Davis,* 112 AD2d 722, 724).

Although not objected to by defense counsel at the time, during summation there was a totally unnecessary and highly prejudicial reference by the prosecutor to the MacMurray incident as a demonstration of defendant's propensity for violence *(see, People v Wright,* 41 NY2d 172). In addition, there was a manifestly improper attempt by the prosecution to vouch for the People's witnesses by reference to the fact that Batcher was believed by the State Police and the District Attorney's office, and that a Grand Jury returned an indictment against defendant *(see, People v Carter,* 40 NY2d 933). In sum, it is our view that the cumulative effect of these errors tended to deprive a defendant of a fair trial.

■ Since there must be a new trial, we address an issue raised at oral argument as to the admissibility of the contents of the last taped conversation between defendant and Batcher on the charge of conspiracy in the second degree. The statements made by defendant may not have been made in furtherance of the conspiracy but they were properly received as admissions by defendant as to his participation in criminal activity. Accordingly, and for the reasons stated, there must be a reversal of the judgment of conviction, a dismissal of the count of attempted murder in the second degree, and a new trial on the remaining count of conspiracy in the second degree.

CASEY, J. (concurring). Although I agree in the result reached by the majority, I disagree with the approval that the majority has accorded the ruling of County Court admitting the tapes into evidence without redaction.

The tapes contain evidence of defendant's prior uncharged criminal acts. These acts involve defendant's possible injection of an overdose of insulin to a Mrs. MacMurray, and his attempted strangling of a man who owed him money. The taped conversations were ruled admissible in unredacted form on the issue of defendant's intent and to counter defendant's trial claim that his talk of killing Macri was only a joke. Even conceding that the tapes could be admitted under the rule of *People v Molineux* (168 NY 264), that is but the initial step in the determination of their admissibility in unredacted form.

The next and more critical inquiry is whether there is any limitation to the *Molineux* exception *(see, People v Ely,* 68 NY2d 520, 529). The determination of this issue is governed by the three rules prescribed in *People v Ely (supra,* at 529-530). Applying the required criteria to the facts and circumstances herein leads me to conclude that the unredacted material fails to pass the test in all respects. The failure of County Court to redact the references of uncharged crimes was highly prejudicial to defendant, and such crimes were neither significantly probative of the crimes charged nor inextricably woven into defendant's taped statements. Defendant's conversation in which he speaks on the tapes of killing Macri occurred prior to the discussion of uncharged crimes, and notably the subject of uncharged crimes was not initiated by defendant but by Batcher, who was at the time a police informer and acting under their discretion and control.

The error is more apparent when considered in light of the

use to which it was put by the prosecutor in summation, wherein he stated: "Now you've heard how * * * this defendant was not a violent man. You've listened to the tapes to show about this man's violence, about putting a belt around somebody's neck * * * And the absurdity is intensified about what he says about Mrs. M[a]cMurray, took the insulin and shot it in her leg * * * But that isn't the most essential element, that just points to the violence that this man is accompanied * * * him throughout his life."

It is my conclusion, therefore, that it was error for County Court to have admitted the tapes in unredacted form, and that this error should be added to the reasons relied on by the majority for reversal of defendant's conviction.

MAHONEY, P. J., YESAWICH, JR., and LEVINE, JJ., concur with KANE, J.; CASEY, J., concurs in an opinion.

Judgment reversed, on the law, first count of indictment charging attempted murder in the second degree dismissed, and matter remitted to the County Court of Albany County for a new trial on the second count charging conspiracy in the second degree.