**16** THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM CONA et al., Appellants. — Appeals from seven judgments, one as against each defendant (Cona, Reitano, Maroney, Brown, Conti, Carter and Auletta), of the Supreme Court, Kings County, all rendered October 3, 1973, convicting each of them of bribe receiving, conspiracy in the third degree (two counts), receiving a reward for official misconduct and official misconduct, upon a jury verdict, and imposing sentences. By order dated January 9, 1978 this court reversed the judgments as against the afore-mentioned defendants, on the law, and dismissed the indictment as against them *(People v Cona,* 60 AD2d 318). On December 13, 1979 the Court of Appeals reinstated the convictions of these defendants and remitted the case to this court for further proceedings (49 NY2d 26, 37). Judgments modified, as a matter of discretion in the interest of justice, by reducing the sentences imposed to concurrent periods of probation (of five years on the convictions of bribe receiving and receiving a reward for official misconduct and of three years on the convictions of conspiracy in the third degree and official misconduct). As so modified, judgments affirmed and cases remitted to the Supreme Court, Kings County, to fix the conditions of probation and for further proceedings so that execution of the judgments may be commenced or resumed. This court's reversal of defendants' convictions and dismissal of the indictment as to them stemmed from the testimony of Police Officer Buchalski. From November, 1970 to January 10, 1972, Buchalski was a member of a scheme involving him and a group of other New York City police officers to obtain moneys from gamblers for a guarantee that the operations of those gamblers would not be curtailed by law enforcement action. Buchalski left the conspiracy (also referred to as the "pad") on January 10, 1972 and agreed to co-operate with police authorities in their investigation of the corrupt enterprise. Part of Buchalski's co-operation entailed his securing of tape recordings of conversations with fellow members of the illegal scheme which allegedly included the defendants. On appeal we held that since the only evidence ascribing some of the voices on the tapes to defendants was the uncorroborated testimony of Buchalski, the tapes did not serve as independent

corroboration of Buchalski's other testimony implicating them. In effect, we held that when a person testifies concerning events that took place while he was an accomplice, additional testimony by him about incidents which took place after he was no longer an accomplice may not serve as independent corroboration of the former testimony. Accordingly, this court reversed the convictions and dismissed the indictment for insufficient evidence of guilt. We made such determination despite the fact that no objections had been made by these seven defendants to that portion of the trial court's charge which dealt with the application of the accomplice corroboration rule to Buchalski's testimony concerning these defendants. The trial court, in its charge, did not include an instruction to the effect that Buchalski was an accomplice as a matter of law with respect to his testimony as to defendants' recorded and incriminatory statements. This court also reversed the convictions and dismissed the indictment with respect to two codefendants, Zummo and Mattina, whose convictions were based on the uncorroborated testimony of Police Officer O'Brien. Initially O'Brien had been assigned as an undercover police agent to investigate the alleged police corruption, but he later became an active member in the conspiracy to protect gamblers in their unlawful operations. In order to avoid prosecution, O'Brien ultimately agreed to co-operate with the investigation and once again became an undercover police agent. Unlike defendants here, codefendants Zummo and Mattina requested a charge that testimony by O'Brien about events during the period in which he was acting as an undercover officer had to be corroborated by independent evidence. This court, agreeing that such charge should have been given, set aside the convictions of codefendants Zummo and Mattina and dismissed the indictment as to them. The majority of the Court of Appeals affirmed our determination as to Zummo and Mattina, noting that by timely requesting a charge on the necessity of independent corroboration vis-à-vis O'Brien's testimony, they had created a question of law "amenable" to review *(People v Cona,* 49 NY2d 26, 34-35, *supra).* However, the Court of Appeals, by a 4 - 3 vote, modified this court's order with respect to the seven defendants herein and reinstated their convictions. It held that since no objection had been made by them to that portion of the trial court's charge pertaining to its application of the accomplice corroboration rule to Buchalski's testimony, no question of law had been preserved with respect thereto. As a result, continued the Court of Appeals majority, this court had "erroneously concluded as a matter of law that a question of law [had been] preserved with respect to the corroboration of Buchalski's testimony despite defendants' failure to object" to the court's charge on such issue *(People v Cona,* 49 NY2d, at p 34, *supra).* After concluding that this court erred in determining that a question of law was presented to it, the Court of Appeals, *inter alia,* remitted the matter to determine whether it would be appropriate for us to exercise our court's discretionary power to review the alleged error pertaining to the trial court's charge on the corroboration issue with respect to Buchalski's testimony even in the absence of a timely trial court objection (see CPL 470.05, subd 2; 470.15, subd 6). On remittitur we modify the judgment of conviction as to each of the seven defendants, as a matter of discretion in the interest of justice, by reducing the sentences imposed on each defendant from terms of imprisonment to concurrent periods of probation. As so modified, the judgments are affirmed. We decline to consider the issue not preserved by these defendants for review, i.e., the necessity of independent corroboration of Buchalski's testimony pertaining to events during the period he was acting as an undercover police officer. After lengthy and careful consideration, we conclude that neither the interest of justice nor society would be served or benefited by our reviewing the issue of

law pertaining to Buchalski's identification of defendants' voices on the tapes. Our determination is based on a number of factors. First of all we note that during the argument on the motion to dismiss at the end of the People's case for failure to make out a prima facie case, one of the two attorneys who argued on behalf of all the defendants, contended, *inter alia*, that Buchalski, after being criminally involved in the conspiracy, became an agent for the People on January 10, 1972, and that thereafter Buchalski was "no longer a co-conspirator." However, with respect to the testimony of Buchalski's counterpart, Officer O'Brien, who, conversely, had been an undercover officer at the initial stage of the unlawful scheme, but later became a corrupt participant therein, the second of the two attorneys arguing on behalf of all the defendants, stated that once "the individual joins the conspiracy and the conspiratorial purpose continues * * * he adopts all of the acts and conduct prior to joining the conspiracy." The failure of defendants to assert that Buchalski's testimony as to the period he was acting as an undercover officer was that of an accomplice and thus had to be corroborated by independent evidence because at one time he had been a member of the conspiracy, while in effect such argument was advanced with respect to O'Brien's similar albeit converse situation, leads us to conclude that such failure on defendants' part resulted from trial strategy rather than inadvertence. In this regard it should be noted, as conceded by the People both in the Court of Appeals and in this court, and as evidenced by the trial record, that no independent evidence existed to corroborate O'Brien's testimony with respect to the two codefendants (Zummo and Mattina) whose convictions were reversed and indictment dismissed because of lack of such corroborative proof within the purview of CPL 60.22. However, had defendants mounted a successful attack at the trial upon Buchalski's testimony identifying the voices on the tape recordings as those of defendants herein, the record reveals that there were persons presumably available to make such voice identifications who had never been involved in the conspiracy, to wit, the commanding officer of defendants' division (13th), and four officers who were assigned at the time to the same unit. We likewise reject defendants' argument that the corroboration issue vis-à-vis Buchalski's testimony concerning his undercover activity should now be considered by this court in the interest of justice because it is novel and complex, and that at the time of trial case law had not yet evolved sufficiently to warrant an objection by them to the trial court's charge relating to Buchalski's testimony about his undercover activity. The law is settled that *where fundamental error is not involved* an appellant in a criminal case is not entitled to a review of a failure, omission, or refusal of a trial court to give a particular instruction, or to charge on a particular point, unless he has requested the instruction and excepted to the refusal to give it, or has excepted to the charge given on the ground of the failure or omission (24 CJS, Criminal Law, § 1687). Moreover, mention must be made that although defendants and their trial attorneys were undoubtedly present when the same underlying issue was preserved for review by counsel for codefendants Zummo and Mattina with respect to O'Brien's testimony concerning his undercover activity, they did not see fit to take a similar position with respect to Buchalski's voice identification testimony. We are also of the opinion that the trial evidence adduced against each defendant (which includes the voice identification testimony of Buchalski) amply supports the conviction of each. Starkly apparent from the trial record is the shocking betrayal of the public trust by defendants who, on the momentous occasion they became police officers, had taken solemn oaths to enforce the law and ferret out crime. The wound inflicted by them upon the public confidence in protecting and encouraging illegal gambling operations was indeed grievous. The public cynicism

engendered by their criminal conduct, while it cannot be adequately measured, was widespread and pervasive. Simply put, the corrupt scheme, or "pad", was a highly sophisticated enterprise conducted by police officers in a disciplined, co-ordinated and efficient manner. Based on the foregoing, we conclude that any decision by this court to review the issue of law not preserved for review by defendants and thereafter dismiss their indictment for insufficiency of trial evidence, would have a serious adverse impact upon the confidence of the general public in the criminal justice system, and therefore would be unwarranted and unjustified (cf. *People v Clayton,* 41 AD2d 204, 207-208). However, while this court strongly condemns the actions of defendants in the illegal "pad" operations, we do not believe that society would be served by requiring them, at this juncture, to be incarcerated under their sentences imposed more than seven years ago. None of them had a prior criminal record nor has any of them run afoul of the law since his release pending appeal after sentence was imposed on October 3, 1973. Based upon their experiences in this prosecution, it is unlikely that any of them will break the law in the future (cf. *People v Cantor,* 63 AD2d 703). Moreover, all of the defendants, no longer members of the New York City Police Department, are presently gainfully employed, have roots in their communities and have family responsibilities. Incarceration of defendants at this time would undoubtedly cause severe and immeasurable damage to members of their families who are economically dependent upon them. Far from benefiting society to any appreciable degree, their imprisonment at this time would weaken family bonds and undoubtedly place additional strains upon public resources. Therefore, under all of the facts and circumstances of this case, we have exercised our discretion under CPL 470.20 (subd 6) and imposed sentences of probation on each defendant, pursuant to section 65.00 of the Penal Law, and we remand the matter to Criminal Term for the imposition of conditions of probation and for further proceedings so that execution of the judgments may be commenced or resumed. Titone, J. P., Rabin, Margett and O'Connor, JJ., concur.