■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL MILEA, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Calabretta, J.), rendered February 7, 1984, convicting him of murder in the second degree, criminal possession of a weapon in the second degree (two counts), and reckless endangerment in the second degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

On this appeal, the defendant contends, *inter alia,* that the indictment must be dismissed because the People's case, which was based entirely on circumstantial evidence, failed to establish his guilt beyond a reasonable doubt.

In *People v Way* (59 NY2d 361, 365) the Court of Appeals stated that, "When a defendant's conviction is based * * * entirely upon circumstantial evidence of his guilt, it is subject

to strict judicial scrutiny, not because of any inherent weakness in this form of evidence, but to ensure that the jury has not relied upon equivocal evidence to draw unwarranted inferences or to make unsupported assumptions * * * The well-settled standard of proof in such cases is that the facts from which the inference of defendant's guilt is drawn must be 'inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis' " (see, People v Marin, 65 NY2d 741). It is not necessary for each piece of circumstantial evidence to rule out any hypothesis other than guilt, but the totality must (People v Cathey, 38 AD2d 976).

Viewing the evidence, as we must, in a light most favorable to the prosecution, and giving it the benefit of every reasonable inference to be drawn therefrom (People v Lewis, 64 NY2d 1111, 1112), we conclude that the defendant's guilt was proven beyond a reasonable doubt.

Review of the record before us discloses that, moments after it crashed, the defendant was seen by law enforcement officers fleeing from a silver vehicle, which they had been chasing at a high rate of speed (90 to 100 miles per hour) along the Van Wyck Expressway. The defendant was shortly thereafter apprehended and arrested. Found in the vehicle's rear seat were the codefendant (Antonio Nieves) and Juan Pion Baez, who had been shot eight times, twice in the head. Before he was removed from the scene in an ambulance, Baez told one of the officers in English and Spanish, "I shot, he shoot me, white guy, el blanco, I'm dying, blood, sangre". Significantly, the defendant was the only white person of the three connected with the silver vehicle, thereby fitting Baez's description, "[the] white guy, el blanco". Baez died on his way to Jamaica Hospital.

The defendant's presence in the vehicle was also established by the discovery therein of a wallet containing a birth certificate and an application for a driver's license bearing the name Daniel Martinez. Shortly after his arrest, the defendant identified himself to a police officer as Daniel Martinez. Later, the defendant identified himself as Daniel Milea.

Two revolvers, a .32 and a .38 calibre, were also found in the silver vehicle. According to expert testimony, two .32 calibre bullets found in the vehicle were fired by the same .32 calibre weapon found during the search of the vehicle. The revolver had six chambers, five of which evidenced discharge. The expert further testified that a bullet which had been

removed from Baez was a .38 calibre bullet which *could* have been fired by the aforementioned .38 calibre revolver. He could not be certain, however, because the bullet was too deformed.

Finally, the associate medical examiner who performed the autopsy on Baez found, *inter alia,* that Baez had been shot eight times and that several bullets had exited from his body. Based on his findings, the medical examiner concluded, *inter alia,* that Baez died as a result of eight gunshot wounds; that the death was homicidal; that some of the wounds were inflicted at a distance of at least two feet; and that Baez could not have lived more than 5 or 10 minutes after he was shot.

The inexorable conclusions to be drawn from this evidence are that Baez was fatally shot eight times while he was in the silver vehicle, which was being chased by the police, and that the defendant was one of two gunmen.

The defendant's argument that the People's proof was insufficient because it was based upon evidence of consciousness of guilt, viz., flight and concealment of identity, is unavailing. While the Court of Appeals in *People v Moses* (63 NY2d 299, 308) and this court in *People v Davila* (110 AD2d 545), have recognized that this species of evidence is inherently weak, the record is clear that the conviction did not rest entirely or even primarily on that evidence.

Nor is there any merit to the defendant's argument that the People failed to prove beyond a reasonable doubt the element of intent. The evidence established that Baez was shot eight times at close range in the head, face, jaw, upper chest, abdomen and arm. In this regard, what was stated long ago by the Court of Appeals in *People v Sanducci* (195 NY 361, 367-368) is equally true today: "Repeated shots, blows or acts of violence point toward deliberate action."

In short, the evidence presented by the People was sufficient in quantity and quality that " '[a] rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt' " (*Jackson v Virginia,* 443 US 307, 319, quoted in *People v Contes,* 60 NY2d 620, 621). Accordingly, the jury verdict should not be disturbed.

We have reviewed the defendant's remaining contentions and find them to be lacking in merit. Mollen, P. J., Niehoff, Rubin and Lawrence, JJ., concur.