THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK A. TUSA, Appellant.

Second Department, May 16, 1988

## APPEARANCES OF COUNSEL

*Vivian Shevitz* for appellant.

*Patrick Henry, District Attorney (Patricia A. Murphy* of counsel), for respondent.

## OPINION OF THE COURT

KOOPER, J.

The principal issue to be addressed on appeal is whether the court properly declined to charge the jury—as requested by the defendant—that two prosecution witnesses be deemed accomplices as a matter of law for the purposes of the corroboration requirements set forth in CPL 60.22. For the reasons that follow, we conclude that the court properly determined that the status of the two witnesses as accomplices represented an issue for the jury's resolution and, accordingly, we affirm.

### I

The facts, insofar as pertinent, disclose that on July 6, 1985, the defendant Frank A. Tusa, accompanied by two friends, Jeffrey Nicolini and John Mulvey, left the defendant's home in his automobile with no particular destination in mind. The defendant had in his possession at the time a rifle which he had recently acquired.

With Mulvey operating the automobile, the three men stopped first at the residence of a friend where the defendant

discharged the rifle into the air, and then near a junior high school field, where the defendant fired the rifle into the ground. Finally, they arrived at a nearby tavern where both Mulvey and Nicolini became heavily intoxicated. The record indicates, however, that the defendant had refrained from excessive drinking.

After leaving the tavern sometime between 1:00 A.M. and 2:00 A.M. on July 7, 1985, the men proceeded to the Southern State Parkway where, in the right lane, they noticed a red Camaro directly in front of them. Upon observing the Camaro, the defendant suggested that they harass and frighten the driver. Mulvey testified that defendant repeatedly requested that he "hit" the Camaro, to which he allegedly replied "[n]o, I ain't hitting the guy's car". Nicolini, who was reclining in the back seat, similarly testified that the defendant urged Mulvey to "scare the shit out of this guy" and also stated "[l]et's shoot at him". Mulvey, however, denied that the defendant mentioned shooting at the Camaro, and testified that after declining the defendant's entreaties, he accelerated so as to pass the Camaro on the left. Nicolini testified that in so doing, Mulvey pulled alongside the Camaro for a period of approximately 30 seconds. At this point, according to Nicolini, the defendant reached for the rifle, which he had left between the door and front seat, and pointed it out the window. Nicolini testified that both he and Mulvey immediately admonished the defendant not to "screw around" and to "[p]ut the gun away". Nevertheless, the defendant fired a single shot into the Camaro which fatally struck the operator of the vehicle in the head.

After the shot had been fired, Mulvey—who claimed that he was "freaking out" at this point—heard Nicolini laughing in the rear. Nicolini testified that he told defendant, "are you crazy", and wrested the gun from his grasp, concealing it in a red towel. Mulvey then pulled away from the decelerating Camaro, which had by now swerved off the road and crashed into a group of trees lining the highway. Although the three men turned around and passed the scene of the crime a short time later, they did not linger because they saw State Troopers milling about.

A few days later, Nicolini learned from reading a newspaper account that the driver of the Camaro had died from a gunshot wound to the head. Thereafter, he dismantled the rifle and disposed of it.

## II

Acting upon an anonymous phone call which implicated the defendant in the shooting, the police initially placed him under surveillance. They questioned Mulvey on September 13, 1985, but he denied knowledge of the incident at that time. Thereafter, the police attempted to question Nicolini after obtaining information that he was a friend of the defendant. On October 5, 1985, Nicolini was informed by the authorities that he would be granted immunity if he agreed to disclose what had transpired on the night of the shooting. Nicolini agreed, and subsequently identified the defendant as the shooter. The defendant was arrested on October 7, 1985. When Mulvey discovered that the defendant had been arrested, he voluntarily surrendered to the police and was placed under arrest and later charged with hindering prosecution. The police sought, and obtained, Mulvey's cooperation, in return for which he was permitted to plead guilty to the misdemeanor of hindering prosecution in the third degree with a promise of probation. Thereafter, the defendant was charged with one count of murder in the second degree in connection with the shooting of Albert Ragozzino, who had been operating the red Camaro on the night in question.[1]

After the close of testimony—and prior to the submission of the case to the jury—the defense counsel requested that the Trial Judge charge the jury that Mulvey and Nicolini were accomplices as a matter of law. The court declined to do so, although it subsequently agreed to submit the issue to the jury as a question of fact for its resolution. Thereafter, the jury convicted the defendant of murder in the second degree.[2] On appeal, the defendant contends, *inter alia,* that the court erred in declining to charge the jury that Mulvey and Nicolini were accomplices as a matter of law. We disagree.

## III

The statutory proscription against the conviction of a defen-

---

1. Specifically, the indictment accused the defendant of murder in the second degree, in that, under circumstances evincing a depraved indifference to human life, he recklessly engaged in conduct which created a grave risk of death to another person (*see,* Penal Law § 125.25 [2]).

2. At the request of the People, the jury was charged in respect to the lesser included offense of manslaughter in the second degree. Thereafter, the defense counsel's request that the jury be charged as to the crime of criminally negligent homicide was granted.

dant based upon the uncorroborated testimony of an accomplice has its genesis in the traditional view held by the courts that such testimony "may often lack the inherent trustworthiness of a disinterested witness" *(see, People v Berger,* 52 NY2d 214, 218; *see also, People v Moses,* 63 NY2d 299, 305; *People v Cona,* 49 NY2d 26, 34, *on remand* 79 AD2d 1006; *People v Chernauskas,* 137 AD2d 607).

Accordingly, "[c]ourts have thus exercised the utmost caution in dealing with accomplice testimony, especially when the testimony is exchanged for immunity or other favorable prosecutorial consideration" *(People v Berger, supra,* at 219; *People v Cona, supra).* CPL 60.22, the "modern version of the accomplice corroboration statute" *(see, People v Berger, supra,* at 219), defines an accomplice as a witness who, according to the evidence adduced at trial, "may reasonably be considered to have participated in: (a) [t]he offense charged; or (b) [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged" (CPL 60.22 [2]; *People v Basch,* 36 NY2d 154, 157).

In construing the scope of the foregoing statute, the Court of Appeals has observed, *inter alia,* that "even though a witness is not liable criminally as an accomplice for the offense being tried, the witness may be an accomplice for corroboration purposes if he or she may reasonably be considered to have participated in an offense based on *some* of the same facts or conduct which make up the offense on trial" *(see, People v Berger, supra,* at 219; CPL 60.22 [2] [b]). As is apparent from the Court of Appeals holding—and the language of the statute itself—the corroboration requirement is rendered expressly applicable to a limited class of witnesses whose perceived untrustworthiness derives either from their direct complicity in, or their commission of conduct which forms some part of, the crime for which the defendant *is on trial (see, People v Berger, supra).*

■■ Application of the forgoing criteria within the factual context presented establishes that the court properly relegated the accomplice status of both Mulvey and Nicolini to the jury for resolution as a question of fact.[3] Although as the defendant notes, the underlying policy objectives served by the testimo-

---

3. ■ We find that the People's nonpreservation contentions in respect to the accomplice issue to be unpersuasive. While defense counsel did ultimately agree to the submission of a charge under which the status of Mulvey and Nicolini as accomplices would represent an issue to be resolved by the jury, he did so only after his written and oral requests that the men

nial corroboration principle have broadened the definition of the term "accomplice" beyond that which would obtain in a case where one's criminal liability as an accomplice is at issue *(see, People v Berger, supra,* at 219; *People v Basch, supra; People v McAuliffe,* 36 NY2d 820, 822; *People v Brooks,* 34 NY2d 475, 477), in order for a witness to be deemed an accomplice as a matter of law, it must be established that, based on the evidence presented, the jury could reach no other conclusion than that the witness participated in (1) an offense charged or (2) an offense based on the same or some of the facts or conduct which constitute the offense charged *(see, e.g., People v Cobos,* 57 NY2d 798; *People v Duncan,* 46 NY2d 74, *cert denied* 442 US 910, *rearg dismissed* 56 NY2d 646; *People v Crutchfield,* 134 AD2d 508; *People v Kass,* 132 AD2d 571; *see also, People v Basch, supra,* at 157). The evidence adduced at trial in this respect was lacking.

Preliminarily, we reject the defendant's attempt to portray his precipitous homicidal act as the inevitable denouement of an evolving criminal enterprise or scheme, to which Mulvey and Nicolini must, as a matter of law, be deemed principal contributors and accomplices *(cf., People v Cobos, supra; People v Rugg,* 91 AD2d 692, 693). While it is true that in Mulvey and Nicolini, the defendant found willing companions in the evening's initial unsavory activities, it can hardly be stated, as the defendant seemingly suggests, that these activities represented a clear portent of the callous and brutal act which would ultimately bring the evening to its tragic conclusion.

Nor do we perceive—in the events immediately preceding the discharge of the rifle—evidence which required submission of the accomplice issue to the jury as a matter of law. The evidence in this respect revealed that Nicolini—reclining in the rear of the automobile—played no role in the relevant acts which transpired immediately prior to the shooting. Indeed, Nicolini testified that he admonished the defendant and wrested the rifle away from him after the fatal shot had been discharged *(cf., People v Jones,* 135 AD2d 652). Neither did Mulvey's conduct at this critical juncture unequivocally foretell his status as an accomplice. Mulvey testified that he declined the defendant's invitation to "hit" the victim's Ca-

---

be treated as accomplices as a matter of law were denied. Accordingly, having timely asked the Trial Judge to instruct the jury that Mulvey and Nicolini were accomplices as a matter of law, the defendant preserved for appellate review his objections to the court's denial of his request *(cf., People v Calandro,* 127 AD2d 675, 676).

maro. Although it is undisputed that Mulvey accelerated after the defendant requested that he "hit" the other vehicle, Mulvey's testimony suggests that he merely sought to pass the Camaro and did not accelerate so as to facilitate the defendant's conduct in discharging the rifle. Moreover, while Nicolini testified that defendant mentioned "shooting" at the Camaro, Mulvey pointedly denied that the defendant ever made such a statement. Nevertheless, inasmuch as Nicolini testified —albeit in contradiction to Mulvey's testimony—that defendant stated, "[l]ets shoot at [the car]", and, since Nicolini further testified that Mulvey thereafter briefly pulled alongside the Camaro immediately prior to the discharge of the shot, we conclude that differing inferences may be reasonably drawn from the evidence in regard to Mulvey's alleged complicity in the shooting. Accordingly, the question of Mulvey's status as an accomplice represented a question of fact properly left to the jury for determination (see, e.g., People v Vataj, 69 NY2d 985, 987; People v Cobos, supra; People v Dorta, 46 NY2d 818; People v Arce, 42 NY2d 179, 186; People v Rodriguez, 137 AD2d 565; People v Romeo, 130 AD2d 523, 524, lv denied 69 NY2d 1009; People v Eschert, 118 AD2d 724, 725, lv denied 68 NY2d 769).[4]

## IV

■ Finally, we reject the defendant's suggestion that Mulvey and Nicolini were rendered accomplices as a matter of law pursuant to CPL 60.22 (2) (b) by virtue of their subsequent attempts to hinder prosecution. Indeed, we have only recently held that a witness who is merely an "accessory after the fact" is not an accomplice as a matter of law for the purpose

4. The defendant's attempt to enlarge upon the status of Mulvey and Nicolini as accomplices by arguing, alternatively, that both men engaged, as a matter of law, in a "legion" of lesser offenses forming "some part" of the offense charged at trial is unpersuasive (see, CPL 60.22 [2] [b]). Although both men may have "condoned" the defendant's conduct in the sense that they accompanied him and failed to immediately remove the rifle from his possession, we do not perceive the foregoing actions as representing "some part" of the same acts or conduct comprising the offenses charged at trial (see, People v Napoli, 126 AD2d 674, 675, lv denied 69 NY2d 1007; People v Kass, 132 AD2d 571). Moreover, even when the most temporally proximate conduct engaged in by Mulvey—the acceleration of the automobile—is construed as a reckless action constituting "some" part of the offenses charged, Mulvey's complicity in committing such misconduct is nevertheless equivocal (cf., People v Cobos, 57 NY2d 798; People v McAuliffe, 36 NY2d 820, 822).

of the corroboration requirements set forth in CPL 60.22[5] *(see, People v Vataj,* 121 AD2d 756, 757-758, *revd on other grounds* 69 NY2d 985, *supra; see also, People v Le Grand,* 61 AD2d 815, *cert denied* 439 US 835).

More specifically, this court in *People v Vataj* (121 AD2d 756, *supra),* observed that the testimonial corroboration requirement is not properly applied to a witness whose involvement as an accessory after the fact constitutes the crime of hindering the defendant's prosecution. Recognizing that the underlying reason for the corroboration requirement rests upon the perceived untrustworthiness of an accomplice's testimony, the court reasoned that an accessory after the fact, who is less culpably implicated in respect to the offense charged, "is simply not to be mistrusted to the same extent as a person who actually participated in the crime" *(People v Vataj, supra,* at 757). After reviewing the relevant policy considerations, the court concluded that "an 'accessory after the fact' is not to be considered an accomplice as a matter of law" *(People v Vataj, supra,* at 758). We perceive no reason to depart from our recently enunciated precedent in respect to the application of the corroboration requirement to an accessory after the fact.[6]

---

**5.** In *People v Vataj* (69 NY2d 985), the Court of Appeals reversed this court's order, for reasons unrelated to the question whether CPL 60.22 applies to the testimony of an accessory after the fact. Specifically, the court concluded that there was evidence in the record suggesting that the witness in question may have been involved in the preparations made by the defendant for the murder of which he was convicted. In light of the foregoing, the court held that a question of fact arose as to the witness's status as an accomplice *(see, People v Vataj, supra,* at 987).

**6.** We note that various other jurisdictions have similarly concluded that an accessory after the fact is not an individual to whom the corroboration rule applies *(see, e.g., Gamez v State,* 737 SW2d 315 [Tex]; *Miguez v State,* 715 SW2d 795, 799 [Tex]; *Hanna v State,* 560 P2d 985 [Okla]; *Jacks v State,* 364 So 2d 397, *writ denied Ex parte Jacks,* 364 So 2d 397, *cert denied* 364 So 2d 406 [Ala]; *Commonwealth v Hudson,* 489 Pa 620, 414 A2d 1381; *State v Eakins,* 292 NC 445, 233 SE2d 387). Indeed, the majority of States do not require corroboration, even when the testimony of an accomplice is involved *(see, People v Moses,* 63 NY2d 299, 310-311 [Jasen, J., dissenting]; *People v Thomas,* 135 Misc 2d 434, 436, n 2), and the Federal rule dispenses entirely with the need for corroboration, requiring only a cautionary charge to the jury when an accomplice testifies *(see, e.g., United States v Gardea Carrasco,* 830 F2d 41; *United States v Moreno,* 649 F2d 309, 312; *United States v Augello,* 452 F2d 1135, 1140, *cert denied* 406 US 922, *cert denied sub nom. Sciortino v United States,* 409 US 859).

We have examined the defendant's remaining contentions and find them to be either unpreserved for appellate review or lacking in merit.

MOLLEN, P. J., LAWRENCE and WEINSTEIN, JJ., concur.

Ordered that the judgment is affirmed.