■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY YOUNG, Appellant. [653 NYS2d 124] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Miller, J.), rendered June 2, 1993, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The murder for which the defendant was convicted in this case was committed by the defendant in the basement of his mother's house in Elmont, New York, where he was residing at the time. At trial, there was evidence adduced indicating that the defendant, who had been friendly with the victim up to that point, had previously committed a double murder with him. According to the prosecution's principal witness, the defendant was concerned that the victim would implicate him in the double murder and killed him in order to silence him. The witness, who also lived in this house when the murder was committed, spoke to the police after the murder and later identified the defendant as the killer.

The witness testified at trial that on May 5, 1987, the defendant told her that he intended to kill the victim. The witness did not take him seriously at the time since she believed the victim was one of the defendant's closest friends. The next morning, the witness called a taxi cab which she intended to take to visit her mother in Brooklyn. The defendant and his brother persuaded her to ride to a hardware store before continuing to Brooklyn.

Upon arriving at the hardware store, the defendant and his brother left the witness in the taxi cab, entered the store, purchased some rope, and then returned to Elmont, after which the witness proceeded to Brooklyn to her mother's home. At that time, the witness met with her brother. Apparently, the defendant had given her brother a gold ring with the victim's name on it which the defendant was attempting to locate to ensure there would be no connection made between him and the victim. Although the witness's brother had informed the defendant that the ring had been stolen, the defendant asked the witness to inquire about it and threatened to kill her brother if the ring was not returned.

When the witness returned to Elmont, the defendant, his brother, and the victim were watching television. Shortly thereafter, the defendant and his brother went into the basement. After a while, the defendant went upstairs and told the victim that he should come downstairs too since they had some "work" (meaning robberies) to discuss. As the defendant passed the witness, he told her to lock the basement door and open it only at his request. When the defendant came upstairs some time later, he informed the witness that he and his brother had killed the victim. At the defendant's request, the witness left the house with her children and thereafter called several times to ask the defendant when she could return. Subsequently, the defendant gave the witness a chain which he had taken from the victim and she pawned it at a shop in Brooklyn.

After the close of evidence the defense counsel requested that the court charge the jury that the witness was an interested witness and "an *accessory,* as a matter of fact, not law" (emphasis added). Counsel provided no clarification of precisely what type of charge he was asking for and did not recite the relevant evidence on which he was relying to support his request. The court denied the application and the jury ultimately convicted the defendant of murder in the second degree. We affirm.

The defendant contends, *inter alia,* that the court erred in failing to submit as a factual question for the jury to resolve the witness's alleged status as an accomplice (*see,* CPL 60.22 [2]). This contention is unpreserved for appellate review. By specifically requesting that the court charge the jury that the witness was an "accessory", the defense counsel failed to alert the court to the contention now raised on appeal that the witness's alleged status as an accomplice should have been submitted to the jury for resolution (*see,* CPL 60.22 [2]; *People v Aleschus,* 55 NY2d 775; *People v Balser,* 185 AD2d 679; *People v Graham,* 111 AD2d 831). In any event, the court properly denied the requested charge.

CPL 60.22 (2) provides, in part, that an accomplice is a witness who, according to evidence adduced at trial, may reasonably be considered to have participated in the offense charged or an offense based upon the same or some of the same facts or conduct which constitute the offense charged (*see, People v Sweet,* 78 NY2d 263, 265; *People v Cobos,* 57 NY2d 798; *People v Berger,* 52 NY2d 214; *People v Basch,* 36 NY2d 154, 157). Here, the evidence was insufficient to establish that the witness participated in the offense charged or an offense based upon the same or some of the same facts or conduct which con-

stituted the offense charged (see, People v Jones, 73 NY2d 902, 903; People v Tucker, 72 NY2d 849, 850; People v Balser, supra, at 680; People v Santana, 82 AD2d 784, affd 55 NY2d 673). The defendant's assertions to the contrary rest upon speculative inferences which lack a reliable foundation in the record.

Although the defendant mentioned to the witness that he intended to kill the victim because he could no longer trust him to remain silent, the witness testified that she did not take him seriously or believe him until after he actually came up from the basement and announced that he had committed the murder. The mere fact that the defendant may have informed the witness of his desire to kill the victim does not make her a participant in the crime for the purposes of CPL 60.22. Further, the defendant's speculation that the witness could be considered an accomplice because she allegedly assisted the defendant in procuring a rope which may have been used in the murder is not supported by the record. There is no evidence in the record to establish that the witness actually assisted the defendant in purchasing the rope or that she was aware that the defendant may have planned to use it to commit a murder (see, People v Santana, supra; cf., People v Sweet, supra).

That the witness closed the basement door at the defendant's request prior to the murder does not create a factual issue with regard to her status as a participant in the crime committed. The record contains no evidence supporting any type of reliable inference that the act of closing a door demonstrated complicity in the crime subsequently committed in the basement or even that the witness was aware of what the defendant intended to do there. To the contrary, prior to the defendant's request, the defendant informed the witness, whose children were in the house watching television, that he and the victim would be going downstairs to discuss some "work".

The fact that the witness spoke to her brother about the victim's ring is similarly unavailing. The witness was aware that the defendant wanted to eliminate any connection between him and the victim in light of the prior murders they had committed together and that her brother's possession of the ring could possibly supply evidence of such a connection. Moreover, the defendant had threatened to kill her brother if the ring was not returned. That the witness made inquiries concerning the ring provides no evidence that she was a participant in the subsequent murder committed by the defendant. In fact, the record supports the conclusion that the witness was doing nothing more than attempting to ascertain the location of the ring to allay the defendant's concerns and to ensure that he would not injure her brother.

Although the witness took her family to the movies after the murder at the defendant's request while he disposed of the body, called several times to ascertain when she could return, and pawned the victim's chain after receiving it from the defendant, these acts might suggest, at most, that the witness was an accessory after the fact (*cf., People v Tusa,* 137 AD2d 151, 158). These acts fall short of creating any type of factual issue with respect to the witness's alleged status as a participant in the commission of the murder within the meaning of CPL 60.22 (*see, People v Jones, supra; People v Tucker, supra; People v Santana, supra; see also, People v Sacco,* 199 AD2d 288; *People v Dragnone,* 187 AD2d 604, 605).

The defendant's remaining contentions are either unpreserved for appellate review or without merit. Thompson, J. P., Pizzuto and Luciano, JJ., concur.

Goldstein, J., dissents and votes to reverse the judgment appealed from, on the law, and to grant a new trial, with the following memorandum: Owing to numerous trial errors, I am constrained to vote to reverse the defendant's judgment of conviction.

The key witness for the prosecution was the defendant's girlfriend. At the trial, the defense counsel requested an instruction that the witness was "an accessory, as a matter of fact, not law", but the court denied the request, finding there was "no proof of that". Accordingly, the question of whether the witness's status as an accomplice should have been submitted to the jury for resolution was indeed preserved for appellate review (*cf., People v Aleschus,* 55 NY2d 775; *People v Balser,* 185 AD2d 679; *People v Graham,* 111 AD2d 831). The terms "accomplice" and "accessory" are used interchangeably (*see, People v Rivera,* 84 NY2d 766). Therefore, the defense counsel's use of the term "accessory" should not be deemed significant.

The majority analyzes each item of evidence of the witness's complicity separately, and concludes that the defendant's claim that there was a question of fact as to whether the witness was an accomplice rests upon "speculative inferences". However, the items of evidence must be considered in their totality, not separately (*see, People v Cross,* 174 AD2d 313; *People v Milea,* 112 AD2d 1011). Further, the issue before this Court is not whether the witness was an accomplice as a matter of law, but whether there was a question of fact as to whether she was an accomplice. The majority, acting as fact-finder, concluded that the witness was not an accomplice. However, in so doing, it has usurped the jury's function. The law is well settled that, "if dif-

ferent inferences may reasonably be drawn from the proof regarding complicity * * * the question should be left to the jury for its determination" (*People v Basch,* 36 NY2d 154, 157).

From the totality of evidence adduced at the trial, I conclude that there was a question of fact as to whether the witness participated in the planning and execution of the crime (*see, People v Vataj,* 69 NY2d 985; *People v Morillo,* 156 AD2d 479). The witness acknowledged that the defendant told her of his plans to kill the victim. Acting on those plans, the defendant sent the witness to retrieve a ring from her brother with the victim's name on it, because the defendant did not want anyone to have anything connecting him with his intended victim. The witness also accompanied the defendant and his brother to a hardware store to purchase rope, which may have been used to strangle the victim. During the actual murder, which occurred in the basement of the defendant's mother's home, the defendant instructed the witness to keep the basement door locked while the murder was accomplished, and to open the door only when the defendant asked her to. She complied, and continued to comply, even after the defendant informed her that he had strangled the victim. Thus, an inference could be drawn that she acted as lookout (*see, People v Basch, supra*).

Then, at the defendant's request, the witness took her family to the movies to get everyone out of the house while the defendant disposed of the body, called the defendant three times to ascertain when she could return, and returned to the house only after the defendant authorized her to do so. The defendant gave the witness a chain which had belonged to the victim. She later pawned it. The fact that she shared in the proceeds of the crime was further evidence of her complicity (*see, People v Dorler,* 53 NY2d 831; *People v Mitchell,* 216 AD2d 156; *cf., People v Tucker,* 72 NY2d 849). Based upon the foregoing, the trial court should have submitted to the jury the issue of whether the witness was an accomplice under CPL 60.22 (2) (a).

Further error was committed when the trial court limited cross-examination of the key prosecution witness with respect to her alleged prior crimes, thus depriving the defendant of his right of confrontation (*see, People v Ashner,* 190 AD2d 238, 246-248). Initially, the trial court stated it was limiting cross-examination because the witness "has no lawyer representing her, and she has a right to be protected". When the defense counsel asked for a lawyer to be appointed for the witness, the trial court replied "Well, I don't know" and thereafter denied the defense counsel's request for a sidebar conference. Thereaf-

ter, the trial court acknowledged that the defense counsel had a good-faith basis for her questions and claimed that it had precluded cross-examination with respect to the witness's prior crimes because it feared that such testimony from the defendant's girlfriend, who was living in the same house with the defendant, would tarnish the defendant's reputation. However, such questions of trial strategy are properly left to the defendant and defense counsel (*see, People v Yut Wai Tom,* 53 NY2d 44, 56-57; *People v Hills,* 140 AD2d 71).

The trial court noted that if the defense counsel were to recall the witness to continue cross-examination, the witness would be considered a hostile witness for the defendant. The law is well settled that a party may not impeach the credibility of his or her own witness, except with contradictory statements made in writing or under oath (*see, People v Fitzpatrick,* 40 NY2d 44, 56; *Jordan v Parrinello,* 144 AD2d 540). The designation of a witness as hostile simply permits leading questions to be asked on direct examination (*see, People v Bracey,* 174 AD2d 527). Therefore, the remedy authorized by the trial court—permitting the defendant to recall the witness as a hostile witness—was woefully inadequate. Understandably, the defense counsel declined to avail herself of it.

The trial court engaged in additional second-guessing of the defense counsel's strategy decisions when it denied counsel's request for a curative instruction directing the jury to disregard irrelevant testimony that the defendant's brother was incarcerated on the ground that such an instruction would highlight the testimony.

In light of the foregoing, the judgment appealed from should be reversed and a new trial ordered.