(105 App. Div. 381.)

## PEOPLE v. DU VEAU.

(Supreme Court, Appellate Division, First Department. June 16, 1905.)

1. ROBBERY—ATTEMPTS—CONNIVANCE OF AUTHORITIES.

Pen. Code, §§ 224, 228, define robbery in the first degree as the unlawful taking of personal property from another against his will by force or violence or fear of injury by a person armed with a dangerous weapon. Section 34 provides that an act done with intent to commit a crime, and tending, but failing, to effect its commission, is an attempt to commit that crime. Section 29 provides that a person concerned in the commission of crime, whether present. or absent, and one who induces another to commit a crime, is a principal. Defendant suggested to one N. the robbery of one L., explained the details of his plan to him, and furnished him with a dangerous weapon with which to assault L. N. had immediately reported the proposed plot to the district attorney, and was directed to act under the instructions of county detectives; and one of the county detectives, M., subsequently pretended to act as a confederate. On the day stipulated, defendant, with N. and M., went to L.'s premises, and defendant waited outside, while N. and M. went in to perpetrate the robbery. Defendant was thereupon arrested by other detectives who were waiting outside. *Held*, that defendant was guilty of an attempt to commit robbery in the first degree.

2. SAME—DEFENSES.

Where the evidence on a trial for attempt to rob showed that defendant suggested to one N. the robbery of one L., and furnished him with a weapon with which to assault L., and on the day stipulated defendant and N. went to L.'s premises, whereupon detectives, to whom N. had divulged the plot, arrested defendant, and the owner of the property had no knowledge of the contemplated robbery, but was at the time on the premises with money and property that would have been taken, the fact that the detectives knew of the contemplated crime was no defense.

3. SAME—DANGEROUS WEAPONS—WHAT CONSTITUTES.

A rubber hose with a piece of lead in the end thereof is a dangerous weapon, within Pen. Code, §§ 224, 228, defining robbery as the unlawful taking of personal property from the person of another by one armed with a dangerous weapon.

4. CRIMINAL LAW—APPEAL—DISPOSITION OF CAUSE—AFFIRMANCE ON MERITS.

Where, on the whole case, a conviction was justified, it would not be reversed because of the introduction by the district attorney of incompetent testimony to which no objection was made.

Appeal from Court of General Sessions, New York County.

Edgar A. Du Veau was convicted of attempt to commit robbery in the first degree, and appeals. Affirmed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, and INGRAHAM, JJ.

Lewis Stuyvesant Chanler, for appellant.

Robert C. Taylor, for the People.

INGRAHAM, J. The defendant was indicted for an attempt to commit robbery in the first degree. By sections 224 and 228 of the Penal Code that crime is defined to be the unlawful taking of personal property from the person or in the presence of another against his will by means of force or violence or fear of injury by a person being armed with a dangerous weapon, or being aided by an accomplice actually present, or when the offender inflicts grievous bodily harm or injury upon the person from whose possession

94 N.Y.S.—15

or in whose presence the property is taken. Section 34 of the Penal Code provides that "an act done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime." Section 29 of the Penal Code provides that "a person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime, is a principal."

The learned counsel for the appellant relies upon but one exception taken upon the trial. That is a refusal to charge a request which the learned counsel himself pronounces unintelligible. He then calls attention to an objection to a question asked the defendant upon cross-examination, but to the ruling upon that objection no exception was taken. An exception would have been quite unavailing if it had been taken, as overruling such an objection to a question asked the defendant upon cross-examination was not error. The learned counsel for the defendant, however, earnestly insists that the evidence was not sufficient to justify a conviction, and that upon the whole evidence no crime was actually committed, as all that was done was by the procurement of persons connected with the district attorney's office who are designated as "county detectives." To determine this question a careful examination of the whole record was required, and I have carefully considered it all, with the result that I am quite satisfied that the story told by the witnesses for the people was substantially true, and that the defendant's explanation of the conceded facts is most improbable. It is quite true that much evidence was admitted which would probably have been excluded if objection had been made by the defendant. Just why it was not objected to is not apparent; but, it having been admitted without objection, I do not think we should be justified in reversing the judgment, unless it appeared that without that testimony there would have been a reasonable doubt of the defendant's guilt; and the more I have studied this testimony the more I am satisfied that such a doubt does not exist. It is quite unnecessary to make a detailed statement of the facts appearing in this record and which had led me to this conclusion, and I shall not attempt it. The learned counsel for the appellant, however, insists that the defendant is not guilty of any crime, because his accomplices in the perpetration of the robbery were acting under instructions from the district attorney's office; and that, as under the conditions that existed no crime could have been committed, the defendant could not have been guilty of an attempt to commit a crime. To consider this question, a brief statement of the story told by the witnesses for the prosecution will suffice. The defendant was employed in a detective agency in the city of New York, and some time prior to October, 1903, one Nelson had been in the habit of frequenting that office in the hope of obtaining a position there. Nelson was very poor, and was extremely anxious to obtain some position, which was known to the defendant. Between the 21st and 23d of October, 1903, the defendant asked Nelson if he would take a chance, to which Nelson said that he would take a chance at almost

anything, and the defendant on several successive days asked him the same question. On the 28th day of October the defendant explained to Nelson what this chance was. He said: "My girl worked down in 117 & 119 Mercer street, and she is up against a man they call Lewis, one of the bosses, and he wears a watch and chain, a diamond pin, a ring on his finger, and he carries about forty or fifty dollars in money in his pocket on Monday night, which is pay night. We can go up there. I think you are the right man for to do this"—to which Nelson replied, "All right." The defendant also said that this would bring them about $300, which would be about $100 apiece—$100 for his girl, $100 for himself, and $100 for Nelson. Nelson then told the defendant that he was willing to take a chance on that; that subsequently the girl came, and Nelson was introduced to her. The defendant said to the girl: "This is the man that is going to do the job for us. How do you like him?" That the girl looked at Nelson, and said, "He is all right," and that was the end of the conversation. Nelson then went home, and, after considering the proposition, the next morning went to the district attorney's office, and was turned over to the "county detectives," and afterwards followed their instructions. Subsequently the defendant told Nelson that Lewis waited in his shop until after his employés left, and came out alone; that Lewis kept one or two floors in the upper part of a building in Mercer street; that Nelson was to go up, and hide himself in the hall near the entrance to Lewis' place of business, and as Lewis came out Nelson was to strike him a blow on the head, rob him of his jewelry and money, and bring them to the defendant, who would subsequently divide them. The defendant subsequently purchased a piece of rubber hose, and in it inserted a piece of lead, which he gave to Nelson as a weapon with which to assault Lewis; that the defendant subsequently told Nelson that his girl had been discharged from the place, and in consequence of that the attempt was to be postponed; that Nelson told the defendant that he knew a man who had been engaged in some criminal enterprise, and who could be employed for $15 or $20 to assist them in this robbery, to which the defendant agreed, whereupon one of the employés of the district attorney's office was introduced to the defendant as the man that had been spoken of, and it was agreed that he was to commit the assault, for which he was to receive $15. Nelson was to rob Lewis after he was rendered unconscious, and to turn the proceeds of the robbery over to defendant. It was finally arranged that this was to be accomplished on the evening of November 4th, and on that day Nelson and his confederate were instructed by the defendant to meet him at 6 o'clock in front of the premises, 117 & 119 Mercer street. They met there. The defendant told Nelson and his confederate to go upstairs and commit the robbery, while the defendant would wait below. Nelson and his confederate went upstairs to wait for Lewis, the defendant waiting in the immediate neighborhood, and while he was thus waiting he was arrested by a police officer and employés of the district attorney's office. Lewis, who knew nothing about the transaction, was at the time upon the premises. He was called as a witness, and testified that he wore the jewelry described

by the defendant; that he was in the habit of paying his employés on Monday, and was in the habit of having several hundred dollars in bills in his pocket; that it was his habit to wait until all of his employés left the premises, when he locked the doors and went home; that he had no knowledge of the attempt that was to be made to rob him until after the arrest of the defendant, when some of the district attorney's employés told him about it; and that he had never seen either the defendant or Nelson before; and the location of the halls and stairway was found to be as described by the defendant.

It is upon this evidence that the defendant was convicted of an attempt at robbery in the first degree. If this story is true—and the jury were justified in believing it—I think there is no doubt that the defendant was guilty of the crime charged. Lewis, who was to be robbed, was where he was expected to be at the time the attempt was to be made. He had upon his person the property of which the defendant expected to despoil him. The defendant had proposed to Nelson to rob him; had furnished Nelson with a weapon with which he was to be rendered unconscious while Nelson robbed him; had engaged with Nelson's confederate to assist in the attempt; and the defendant was to receive from them the proceeds of the robbery. There was nothing to prevent the scheme from being carried out, and Lewis seriously, if not fatally, injured, and then robbed, except the fact that, unknown to the defendant, the public authorities had been apprised of his purpose, and were on hand to prevent the attempt. The first suggestion of the robbery came from the defendant. The authorities did not propose the commission of the crime. The person to be robbed had no part in the transaction. He was not even warned of the attempt that was to be made upon him. This is entirely different from a case where the owner of property, learning that an attempt is to be made to rob him, takes part in the act by aiding the robbers in their attempt. There certainly can be no doubt but that a crime would have been committed if Lewis had walked out of his premises, locked the door, and had then been assaulted with the weapon furnished by the defendant, and his money and jewelry taken from his person while he was unconscious. If the defendant did an act with intent to commit that crime, and tending, but failing, to effect its commission, he was guilty of an attempt within section 34 of the Penal Code.

In People v. Moran, 123 N. Y. 254, 25 N. E. 412, 10 L. R. A. 109, 20 Am. St. Rep. 732, the defendant was indicted for an attempt to commit the crime of grand larceny in the second degree by attempting to steal from the person of an unknown woman, in the daytime, in the city and county of New York, certain goods, chattels, and personal property of the value of $10. The evidence showed that the defendant, accompanied by two associates, was passing through a crowd of people in a market in the city of New York, and was seen to thrust his hand into the pocket of a woman, and to withdraw it therefrom empty. The defendant was seen by a police officer, and arrested, but the woman was lost in the crowd, and not discovered; and the only question was whether upon this

evidence the defendant was guilty of an attempt to commit the crime of grand larceny within section 34 of the Penal Code. It was held that the defendant was properly convicted. Chief Judge Ruger, delivering the opinion of the court, there says:

"The language of the statute seems to us too plain to admit of doubt, and was intended to reach cases where an intent to commit a crime and an effort to perpetrate it, although ineffectual, coexisted. Whenever the animo furandi exists, followed by acts apparently affording a prospect of success, and tending to render the commission of the crime effectual, the accused brings himself within the letter and intent of the statute. To constitute the crime charged there must be a person from whom the property may be taken, an intent to take it against the will of the owner, and some act performed tending to accomplish it; and when these things concur the crime has, we think, been committed, whether property could in fact have been stolen or not. In such cases the accused has done his utmost to effect the commission of the crime, but fails to accomplish it for some cause not previously apparent to him. The question whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design."

The other question is whether the defendant did an act with the intent to commit the crime, and tending, but failing, to effect its commission. He procured and gave to Nelson the weapon which was to be used, and this weapon was certainly a dangerous weapon within section 228 of the Penal Code. The case of People v. Bush, 4 Hill, 133, was an indictment for an attempt to commit arson. It was proved that the defendant requested one Kinney to set fire to Sheldon's barn, offering him a reward; that afterwards, understanding and believing that Kinney would set fire to the barn, the defendant gave him a match for that purpose, not meaning to be present himself at the doing of the act. It appeared that Kinney never intended to commit the crime. The defendant was convicted, and upon appeal that conviction was affirmed. It was held that the course taken to commit the arson by the hand of Kinney was the same thing, in legal effect, as if Bush had intended to set the fire personally, and had taken steps preparatory to that end; that an attempt may be immediate, but it very commonly means a remote effort, or indirect measure taken with intent to effect an object; that the solicitation was followed by furnishing the instrument of mischief. See, also, McDermott v. People, 5 Parker, Cr. R. 102; Mackesey v. People, 6 Parker, Cr. R. 116; and these cases have been cited with approval in People v. Moran, supra. In People v. Gardner, 144 N. Y. 128, 38 N. E. 1003, 28 L. R. A. 699, 43 Am. St. Rep. 741, the defendant was indicted for an attempt to commit extortion from one Amos, who was a keeper of a house of prostitution. At the time this woman was acting under instructions of the police, trying to induce the defendant to receive money from her under such circumstances as would render him guilty of a crime and enable the police to arrest and convict him. The court below held that, as this woman paid the money voluntarily, and was not actuated by any fear, a crime was not committed; that the fact the defendant's threats did not inspire fear inducing any action on the part of the person from whom money was extorted rendered it impossible to sustain an indictment and conviction for the lesser crime of an attempt at extortion. But that contention was overruled by the

Court of Appeals, the court holding that the threat of the defendant was plainly an act done with intent to commit the crime of extortion; that it tended, but failed, to effect its commission, and therefore the act was an attempt to commit the crime within the statute; that this crime, as defined in the statute, depends upon the mind and intent of the wrongdoer, and not on the effect or result upon the person sought to be coerced. These cases are cited with approval in the late case of People v. Mills, 178 N. Y. 274, 70 N. E. 786, 67 L. R. A. 131. In that case the court held, in speaking of the overt act made necessary by the statute for the commission of the crime, that an overt act is done to carry out the intention, and which must be such as would effect that result, unless prevented by some extraneous cause; and, after citing People v. Bush, the court said:

"The furnishing of the matches was the overt act. If the defendant did anything with intent to steal the papers, which in the ordinary course of events, unless interfered with, would have resulted in the theft thereof, it was an overt act."

Although there was a strong dissent in that case, it was based entirely upon the principle that, where the owner of the property which is to be stolen attempts to induce another to steal it, that other cannot be held to be guilty of an attempt to do an act which was not a crime—a principle which has no application to this case. See, also, People v. Conrad, 102 App. Div. 566, 92 N. Y. Supp. 606. The facts of this case bring it directly within these authorities. The defendant first suggested to Nelson the commission of this crime, which, if consummated, would have been clearly robbery in the first degree. He furnished Nelson and his accomplice with the weapon to carry it out, was present in the neighborhood to receive the results, and was thus directly engaged in an attempt to commit the crime. We think, therefore, that the defendant was guilty. The jury believed the evidence of the prosecution, and after a careful consideration of this testimony I am satisfied that the finding was sustained by the evidence. Under those circumstances we should not be justified in reversing the judgment because testimony was introduced by the district attorney to which the defendant made no objection, and which, if objected to, should have been excluded.

It follows that the judgment appealed from must be affirmed. All concur.