## The People of the State of New York, Appellant, v Andre Trepanier, Respondent.

Fourth Department, January 29, 1982

**APPEARANCES OF COUNSEL**

*Richard A. Hennessy, Jr., District Attorney (John A. Cirando* and *H. Larry Vozzo* of counsel), for appellant.

*Robert L. Tisdell* for respondent.

**OPINION OF THE COURT**

Schnepp, J.

■ We cannot agree that, in the circumstances of this case, defendant can be exonerated from criminal liability for attempted arson because the accomplice whom he hired to commit the crime had no criminal intent and did not

attempt to commit the arson. The Onondaga County Grand Jury indicted the defendant for the crimes of attempted arson in the second degree (Penal Law, §§ 110.00, 150.15), attempted grand larceny in the second degree (Penal Law, §§ 110.00, 155.35), and reckless endangerment in the first degree (Penal Law, § 120.25). The indictment stemmed from defendant's hiring of an undercover New York State trooper to burn down a building containing three apartments and a store.

After reviewing the Grand Jury minutes, County Court granted defendant's motion to dismiss the indictment for legal insufficiency (CPL 210.30) and authorized the District Attorney to resubmit the case to the Grand Jury. With relation to the attempted arson offense the court found that, "[T]he party to the alleged agreement to commit the crime of ARSON was an undercover officer, who never came close to the actual commission of this crime * * * Under the facts of this case, the undercover agent went to defendant's residence with an empty gas can for the express purpose of being arrested. There was no *intent* or an attempt to commit the underlying crime." The court also found that the minutes were legally insufficient relative to the remaining counts.

There was evidence before the Grand Jury that a police informant introduced defendant to Donald Geary, the undercover State trooper, after defendant asked the informant to secure for him the service of an arsonist. Defendant told Geary when he met him that he wanted his building burnt to the ground as soon as his fire insurance was in effect. Geary agreed to do the job for $500. Defendant suggested that an oil tank filled with kerosene, or new boilers in the basement which had been "blowing back flames" could be used as a basis for the fire. He said that he would leave the south side cellar window open as a means of entering the building and showed Geary the entrance point from the outside. Defendant also told Geary that he had purchased and installed smoke alarms in the building to avoid suspicion. At a later meeting defendant told Geary that the insurance was effective and that the fire should be set on the night of February 13, 1981. Defendant said that he had created an "alibi" for that night and that he would

leave the cellar window unlocked and remove the boards covering the window. He also expressed unconcern about the safety of the building's tenants because of his belief that they had been stealing from his store. It was at this time that defendant paid Geary a down payment of $250 for the arson; the balance was due upon completion. During the evening of February 13, Geary, carrying an empty gas can, went to the premises in accordance with defendant's instructions. The boards covering the point of entry had been removed and the window was open. Tenants were observed in the building. Geary walked up to the point of entry with the gas can in his hand when, as previously planned with the Syracuse Police Department, he was placed under arrest for criminal trespass. There was further testimony that defendant had been observed earlier that evening taking most of his belongings from the occupied building and that prior to February 13 the intended point of entry had been boarded up.

Thus, the Grand Jury testimony was sufficient to establish that the defendant (1) hired an arsonist, (2) planned the arson, (3) arranged insurance coverage for the building, (4) created an alibi for himself in anticipation of the arson and (5) prepared the crime scene to permit easy entry of the arsonist into the building. In short, the proof was sufficient to establish that defendant did everything but set the fire himself.

That defendant had a criminal intent is beyond peradventure. This alone is insufficient, however, to establish criminal liability for attempt. Section 110.00 of the Penal Law requires in addition "conduct which tends to effect the commission" of the contemplated crime. "[I]t must be proven that the defendant acted to carry out his intent. The law does not punish evil thoughts" (*People v Bracey,* 41 NY2d 296, 300).

The necessary overt act need not be "'the final one towards the completion of the offense'" (see *People v Bracey, supra,* p 300, citing *People v Sullivan,* 173 NY 122, 133), but it must come or advance "'very near to the accomplishment of the intended crime'". (*People v Di Stefano,* 38 NY2d 640, 652; see *People v Bracey, supra,* p 300; *People v Ditchik,* 288 NY 95, 96; *People v Werblow,* 241

NY 55, 61.) "Whenever the acts of a person have gone to the extent of placing it in his power to commit the offense unless interrupted and nothing but such interruption prevents his present commission of the offense, at least then he is guilty of an attempt to commit the offense, whatever may be the rule as to his conduct before it reached that stage." (*People v Sullivan, supra,* p 136; see, also, *People v Werblow, supra,* p 64-65.)

Acts of preparation to commit an offense do not constitute an attempt (see *People v Bracey,* 41 NY2d 296, 300, *supra*). There "must be a step in the direct movement towards the commission of the crime after preparations have been made." (*People v Collins,* 234 NY 355, 360.) Thus, procuring tools to commit a burglary does not constitute an attempted burglary (see *People v Collins, supra,* p 359; *People v Sullivan,* 173 NY 122, 135, *supra*). Likewise acts of conspiring to commit a crime, or of soliciting another to commit a crime do not per se constitute an attempt to commit the contemplated crime (*People v Werblow,* 241 NY 55, 61, *supra;* see *People v Lubow,* 29 NY2d 58, 65). "The thief who employs a confederate to go to foreign lands and there commit a fraud, has done a wrongful act which is not yet the beginning of the crime, though it incites and prepares for the crime that is to come. The force set in motion is neither continuous nor mechanical, and its operation may be broken before the stage of attempt has been attained" (*People v Werblow, supra,* p 65).

The defendant in this case, however, did more than employ an "arsonist", give him instructions, and send him on his way to commit the crime. The proof is sufficient to establish that on the day fixed by defendant for the arson, and in accordance with the previously made plan, he removed all obstructions to the point of entry through the cellar window and left the window unlocked. These acts go beyond mere planning or preparation. The defendant acted on his plan and took steps to insure its successful implementation. He placed it within the power of the "arsonist" to commit the offense unless interrupted, and, as such, brought the intended crime dangerously near to accomplishment.

Thereafter, the "arsonist" arrived at the scene as planned and went to the agreed upon point of entry. The police "arrested" him as he was about to enter the building through the cellar window.

Although defendant does not dispute the principle that he is bound by his own culpability, he contends that the arson never had any chance of success and did not reach the stage of attempt because the "arsonist" arrived at the scene with an empty gas can. Actually, however, whether or not the gas can was full is irrelevant, since the "arsonist" was a police officer without any intent to commit the offense. Defendant's real argument is that the arson never reached the stage of attempt because the "arsonist" was a police officer who never intended to commit the crime. This argument is without merit.

It is no defense to the crime of attempt that the intended crime was factually or legally impossible of commission, "if such crime could have been committed had the attendant circumstances been as such person believed them to be." (Penal Law, § 110.10; see, also, *People v Dlugash,* 41 NY2d 725.) The focus of attention in assessing criminal liability for attempt is the culpability of the wrongdoer and not extraneous facts or legal issues (see *People v Bauer,* 32 AD2d 463, 470, affd 26 NY2d 915). Thus, criminal liability for attempt has been imposed upon persons who solicited another to commit a crime and took a step towards its completion despite the fact that the contemplated crime had no possibility of success because the person solicited did not intend to carry out the scheme (see *People v Du Veau,* 105 App Div 381; *People v Bush,* 4 Hill 133). In *Bush* the defendant was guilty of attempted arson when he solicited another to commit the crime and gave him a match for that purpose under the belief that the match would be used to start the fire. As in this case, the person solicited to commit the intended arson had no intent to perform the deed. Nonetheless, the court held that the confederate's lack of intent did not affect the defendant's liability for the crime of attempt. In *Du Veau* the person solicited was a police informer. The court rejected defendant's argument that, therefore, he could not be guilty of the crime of attempt and wrote, "[t]here was nothing to

prevent the scheme from being carried out * * * except the fact that unknown to the defendant the public authorities had been apprised of his purpose and were on hand to prevent the attempt." (*People v Du Veau,* 105 App Div 381, 385-386, *supra.*) More recently, it was held in *People v Leichtweis* (59 AD2d 383) that it is no defense to a charge of attempted burglary that a security guard, whom the defendants thought they had bribed, allowed entry into the building solely to permit their capture.

Likewise this defendant cannot be exonerated because facts unknown to him made it impossible for him to succeed. If the condition of Geary's mind had been as defendant supposed, the crime could have been and probably would have been consummated (see *People v Gardner,* 144 NY 119, 124 [conviction of attempted extortion affirmed where victim was police decoy]; cf. *People v Jaffe,* 185 NY 497 [conviction for attempt to criminally receive stolen property reversed when property in fact not stolen]). Geary's lack of intent is no defense to the crime of attempt (see Penal Law, § 110.10).

The evidence presented to the Grand Jury was sufficient to establish a prima facie case of attempted arson in the second degree (Penal Law, § 150.15) by the defendant. Arson in the second degree is committed when a person intentionally damages a building by starting a fire, "and when (a) another person who is not a participant in the crime is present in such building * * * at the time, and (b) * * * the circumstances are such as to render the presence of such a person therein a reasonable possibility." (Penal Law, § 150.15.) The record shows that defendant realized that the proposed arson might injure other tenants in the building and that the building was occupied on the night that Geary arrived at the building to carry out the arson. This proof is prima facie sufficient to establish the aggravating factors required by section 150.15 of the Penal Law.

There was insufficient evidence, however, presented to the Grand Jury to establish the crimes of attempted grand larceny in the second degree (Penal Law, §§ 110.00, 155.35) or reckless endangerment in the first degree (Penal Law, § 120.25) or any lesser included offense. The indictment alleged that defendant committed the crime of at-

tempted grand larceny in the second degree as follows: "[t]hat on or about the months of January and February 1981, at the City of Syracuse, in this county, the defendant attempted to steal an amount in excess of $1,500.00 from his fire insurance carrier." The proof presented to the Grand Jury established that the defendant intended to commit this crime by submitting a false claim to his insurance carrier after the planned fire. The defendant arranged for insurance coverage for the building in anticipation of the fire; but the vital condition precedent to the commission of the grand larceny never occurred, i.e., the fire. Consequently, it cannot be said that the crime of attempted grand larceny in the second degree came "within dangerous proximity to the criminal end to be attained" (see *People v Werblow,* 241 NY 55, 61, *supra; People v Ditchik,* 288 NY 95, 96, *supra*). Likewise, the crime of reckless endangerment in the first degree (Penal Law, § 120.25) requires proof that the defendant's conduct "creates a grave risk of death to another person." Without an actual fire, however, nothing that the defendant or his confederate did "create[d] a grave risk of death" to anyone (Penal Law, § 120.25), nor did it create a "substantial risk of serious physical injury to another person" (Penal Law, § 120.20). The crime of attempted reckless endangerment is nonexistent since it is a nonintent offense (see *People v Foster,* 19 NY2d 150, 152-153; *People v Zimmerman,* 46 AD2d 725; *People v Brown,* 21 AD2d 738).

Consequently, the order of the court below must be modified to reinstate the charge of attempted arson in the second degree, and, as modified, affirmed.

SIMONS, J.P., CALLAHAN, DENMAN and MOULE, JJ., concur.

Order unanimously modified to reinstate the charge of attempted arson in the second degree, and as modified, affirmed.