OPINION OF THE COURT
Budd G. Goodman, J.
The defendant is charged in the instant indictment with the crimes of attempted murder in the first degree (Penal Law §§ 110.00, 125.27 [1] [a] [vi]), conspiracy in the second degree (Penal Law § 105.15) and criminal solicitation in the second degree (Penal Law § 100.10). In his pretrial omnibus motion, the defendant moves this court to (i) inspect the Grand Jury minutes (and for disclosure of such minutes to the defendant), (ii) dismiss count one of the indictment as being legally insufficient, (iii) dismiss count three of the indictment as being *398 defectively pleaded, and (iv) dismiss the entire indictment for lack of accomplice corroboration.
A brief review of the facts of the case is helpful to an understanding of the court’s decision contained herein.
The People contend that the defendant (on behalf of an unnamed third party) hired another person (hereinafter referred to herein as either the Informant or Doe) to procure a hit man to murder Robert Jacobs (Jacobs). In furtherance thereof, the People allege that the defendant approached Doe with a plan to murder Jacobs, provided Doe with a plan to carry out the murder, gave Doe a photograph of Jacobs, together with Jacobs’ home and business addresses and Social Security number and paid Doe the initial sum of $10,000, as a down payment towards a total agreed payment of $25,000, once Jacobs had been murdered. The People further contend that the defendant instructed Doe that the hit should be accomplished in a public manner. It is alleged that before taking any steps to effectuate the plan, the Informant told the police about the plot. Working with law enforcement personnel, Doe informed the defendant that he had procured a hit man to carry out the plan. A telephone conversation which took place on November 26, 1997 between the defendant and Doe and one personal meeting between the defendant and Doe on December 3, 1997 were recorded by the police (the Recordings). Transcripts of the Recordings (which to a large extent are in Hebrew) were introduced into evidence before the Grand Jury (the People state that copies of most of the transcripts have been previously provided to the defendant). In the November 26 telephone call, the Informant tells the defendant that the person that he had originally procured to do the hit had been arrested and is in jail and as a result that person’s brother is now going to do the job. In the same recorded conversation, the defendant is also heard expressing concern about the plan because it was taking too long to complete. In this conversation, the defendant and the Informant allegedly agreed that the murder would have to take place no later than November 28, 1997, or the defendant’s $10,000 down payment would be returned. On December 3, 1997, the Informant met with the defendant at the defendant’s office. At this meeting, the Informant brought with him Jacobs’ driver’s license and a photograph of Jacobs in which he had been made-up by a police artist to appear as though he had been killed. In the recorded conversation of that December 3 meeting, the defendant allegedly informed Doe that the photograph and identification were insufficient proof *399 of Jacobs’ death. He allegedly tells Doe that in order to prove Jacobs’ death, that Jacobs’ body has to be found in public, that a funeral has to be held and that Jacobs’ family has to be seen “sitting Shiva” (the seven-day period of mourning in the Jewish religion). The defendant is heard telling the Informant that the balance of the $25,000 payment will not be paid, unless Jacobs’ death is proven in this manner.
The court has reviewed the submissions of the parties, as well as the relevant statutory and case law and disposes of the defendant’s motion for multiple relief as follows:
1. Motion to Inspect the Grand Jury Minutes; Motion to Release the Grand Jury Minutes; and Dismissal of the Indictment for Legal Insufficiency and/or Defective Grand Jury Proceedings
The defendant’s motion is granted solely to the extent of the court reviewing the Grand Jury minutes, in camera. The court finds that it is able to make a determination as to legal sufficiency without having to release the minutes of the Grand Jury proceedings to the defendant. Therefore, disclosure of the minutes is not permitted. (See, People v Elmhurst Milk & Cream Co., 116 Misc 2d 140, 157; People v Dairylea Coop., 114 Misc 2d 421, 430; see also, Matter of Brown v LaTorella, 229 AD2d 391 [2d Dept 1996].) After reviewing the minutes, the court finds that legally sufficient evidence was presented by the People to the Grand Jury to sustain the indictment and that the proceedings were not otherwise impaired or defective. The court will address each of the defendant’s contentions regarding the Grand Jury presentation individually.
2. Dismissal of Count One of the Indictment (Attempted Murder in the First Degree)
It is well settled that on a motion to dismiss an indictment, “[t]he sufficiency of the People’s presentation is properly determined by inquiring whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury (see, People v Pelchat, 62 NY2d 97)” (People v Jennings, 69 NY2d 103, 114). In this regard, a Grand Jury must have presented to it legally sufficient evidence to establish a prima facie case, including all of the elements of the crime charged and reasonable cause to believe that the accused committed the offense charged. (People v Jennings, supra; People v Galatro, 84 NY2d 160; People v Jensen, 86 NY2d 248; CPL 190.65 [1].) GPL 70.10 (1) defines *400 “legally sufficient” evidence as “competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof’. (People v Jennings, supra.) Legally sufficient has been held to mean “prima facie [proof], not proof beyond a reasonable doubt.” (People v Mayo, 36 NY2d 1002, 1004.) It is irrelevant that the evidence presented to a Grand Jury is also capable of innocent interpretation, as long “as the Grand Jury could rationally have drawn the guilty inference”. (People v Deegan, 69 NY2d 976, 979; People v Jensen, supra.) A court reviewing the Grand Jury presentation must limit its inquiry to the legal sufficiency of the evidence and may not examine the adequacy of proof to establish the reasonable cause required by the Grand Jury to indict. (Supra.)
In moving to dismiss count one of the indictment, the defendant contends that the evidence of his acts presented to the Grand Jury failed to constitute an “attempt” (as defined by Penal Law § 110.00 and case law) to commit the crime of murder in the first degree under Penal Law § 125.27 (1) (a) (vi), because his acts were not dangerously close to accomplishing a criminal result. The relevant sections of the Penal Law for examination are sections 20.00, 110.00, 110.10 and 125.27 (1) (a) (vi). Section 110.00 of the Penal Law provides that “[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.” Section 110.10 further provides that: “If the conduct in which a person engages otherwise constitutes an attempt to commit a crime pursuant to section 110.00, it is no defense to a prosecution for such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission, if such crime could have been committed had the attendant circumstances been as such person believed them to be.” Section 125.27 (1) (a) (vi) of the Penal Law provides that:
“A person is guilty of murder in the first degree when * * *
“the defendant committed the killing or procured commission of the killing pursuant to an agreement with a person other than the intended victim to commit the same for the receipt, or in expectation of the receipt, of anything of pecuniary value from a party to the agreement or from a person other than the intended victim acting at the direction of a party to such agreement”. Section 20.00 of the Penal Law states that: “[w]hen one person engages in conduct which constitutes an offense, another *401 person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.”
Three legal standards exist in the United States by which the acts of an accused who is charged with having attempted to commit a crime may be judged. They are (i) the “slight acts” standard; (ii) the “substantial steps” standard; and (iii) the “dangerously close” standard. It is well settled that New York follows the “dangerously close” standard. In having adopted such standard, case law in this State holds that the actions of an accused must come dangerously close to the accomplishment of the intended crime. (People v Di Stefano, 38 NY2d 640; People v Rizzo, 246 NY 334.) While the acts taken by an accused need not be the final act necessary to complete the crime, it is required that the action taken by an accused be “so near to its accomplishment that in all reasonable probability the crime itself would have been committed, but for timely interference.” (People v Mahboubian, 74 NY2d 174, 196 [Titone, J., concurring in part, dissenting in part], quoting People v Rizzo, supra, at 337.) Therefore, while mere preparation is not enough to constitute an attempt (People v Bracey, 41 NY2d 296, 300), the placement of the boundary line between preparation and • attempt differs from crime to crime. (People v Mahboubian, supra.)
In People v Trepanier (84 AD2d 374 [4th Dept 1982]), the defendant asked an informant to secure the services of an arsonist for him. The informant introduced the defendant to an undercover State Trooper who posed as the arsonist. The defendant met with the undercover officer and told him that he wanted a building that he owned to be destroyed. The undercover officer agreed to do the job for $500 ($250 up-front, with the balance upon completion of the job). The defendant told the informant of the address of the building and suggested the manner in which the job could be accomplished. The defendant also told the informant that he would leave a basement window open as a means of access to the building. The defendant and the informant met one more time when the defendant gave the informant the date on which the fire should be set and paid him the down payment. The Court, in finding that the indictment for attempted arson should be sustained, stated that the defendant had done everything but set the fire himself. In so holding, the Appellate Division stated (at 376-377):
*402 “ ‘[I]t must be proven that the defendant acted to carry out his intent. The law does not punish evil thoughts’ (People v Bracey, 41 NY2d 296, 300).
“The necessary overt act need not be ‘ “the final one towards the completion of the offense” ’ (see People v Bracey, supra, p 300, citing People v Sullivan, 173 NY 122, 133), but it must come or advance ‘ “very near to the accomplishment of the intended crime” ’. (People v Di Stefano, 38 NY2d 640, 652; see People v Bracey, supra, p 300; People v Ditchik, 288 NY 95, 96; People v Werblow, 241 NY 55, 61.)”
The Trepanier Court went on to state that (at 377): “ Whenever the acts of a person have gone to the extent of placing it in his power to commit the offense unless interrupted and nothing but such interruption prevents his present commission of the offense, at least then he is guilty of an attempt to commit the offense, whatever may be the rule as to his conduct before it reached that stage.’ (People v Sullivan, supra, p 136; see, also, People v Werblow, supra, p 64-65.)”
In finding that an attempt had occurred in Trepanier, the Court (while recognizing that conspiratorial acts or the solicitation of another to commit a crime do not per se constitute an attempt to commit the underlying crime) reasoned that the defendant “acted on his plan and took steps to insure its successful implementation. He placed it within the power of the ‘arsonist’ to commit the offense unless interrupted, and, as such, brought the intended crime dangerously near to accomplishment.” {Supra, at 377 [emphasis added].)
Similarly, in People v Du Veau (105 App Div 381 [1st Dept 1905]), the defendant asked a Mr. Nelson to rob the employer of a friend. Nelson reported this solicitation to the police and the District Attorney, who told Nelson to play along with the defendant’s plan. The defendant provided Nelson with a weapon to carry out the plan and explained the details of such plan to Nelson (i.e., that the intended victim would leave work at a certain location after all of the employees had left; that he lived at an address nearby; that he would be carrying a large sum of money; that Nelson was to lay in wait outside the victim’s place of business, hit him on the head and rob him of his money and jewelry and then bring such to the defendant). It was arranged that the robbery would occur on a certain date. The defendant and Nelson (who had another person with him to provide assistance in the planned attack, but who was also an undercover employee of the District Attorney’s office) met outside the victim’s place of business. The defendant *403 instructed Nelson that he and his assistant were to go upstairs and commit the crime. When Nelson did so, the defendant waited in the immediate vicinity, where he was promptly arrested. In upholding the defendant’s conviction for attempted robbery in the first degree, the Court stated that there was nothing which prevented the plan from being carried out, except that the police had been informed of the plan. The Court further commented that the defendant had proposed the plan and met with Nelson to discuss it, furnished Nelson with a weapon to assist in carrying out the plan and was to receive part of the proceeds of the crime.*
In the case at bar, the defendant similarly acted on his plan, took active steps to insure its implementation, and placed it within the power of the purported hit man to commit the offense without any obstacle remaining in the way of fulfillment of the crime. The defendant therefore brought the intended crime dangerously close to its accomplishment. In fact, nothing stood in the way of the commission of the alleged contract murder, except that the person who the defendant allegedly hired to procure the hit man immediately went to the police and became a police informant. A review of the overt acts in which the defendant in the instant case allegedly engaged, in furtherance of the plot to murder Jacobs, makes it apparent that the contract murder was dangerously near completion, and that the defendant was merely waiting for confirmation of Jacobs’ death. Nothing else was required to be done on the defendant’s part to effectuate the murder plan. Those actions taken by the defendant in furtherance of the plan include the following: (i) the payment by the defendant of the sum of $10,000; (ii) the promise to pay an additional $15,000 upon confirmation of the death of Jacobs; (iii) providing a photograph of Jacobs to the Informant; (iv) providing the Informant with Jacobs’ home and business addresses, business telephone and business name; (v) providing the Informant with Jacobs’ date of birth and Social Security number; and (vi) the defendant and Doe agreeing, on November 26, 1997, that if the murder did not take place by November 28, 1997, that the hit man would return the down payment and their further agreement to meet at the defen *404 dant’s office on November 30, 1997, at which time Doe would either provide satisfactory confirmation to the defendant that the murder had been carried out, or the $10,000 would be returned.
By providing the Informant with the $10,000 down payment, photograph, addresses, telephone number, etc., the defendant went beyond mere preparation to commit the crime of attempted murder. The large sum of money provided by the defendant could have easily funded any expenses that the hypothetical hit man would have incurred, and the provision by the defendant of Jacobs’ photograph and location was all that such a hit man would have needed to effectuate the intended crime. While the Grand Jury testimony reveals the defendant’s desire to maintain distance from the intended crime, it appears that if the allegations contained therein are true, that the defendant was merely waiting to obtain satisfactory confirmation that Jacobs had been killed. In fact, after the Informant allegedly tells the defendant that Jacobs has been murdered and shows him the photograph of Jacobs’ body (which had been made-up by a police artist to make it appear that he had been killed), the defendant allegedly states that a photograph is insufficient, that the body must be found in public. Thus, the only remaining step in the completion of the murder plot was the discovery of the intended victim’s body and for the defendant to pay the Informant the balance of the money owed to the hit man. Although the facts of the case at bar are more complex than the typical attempt case, the defendant should not benefit from such complexity, nor should he benefit from his attempt to distance himself from the “dirty work” of the actual commission of the murder of Jacobs. Therefore, the court concludes that at the time of his arrest, the crime of murder was dangerously close to completion, and in fact the defendant appears to have thought that the crime had been completed and was only seeking confirmation of such for himself and the person on whose behalf he was purportedly acting. The only reason that an attempt was not made to kill Jacobs was because the Informant immediately contacted law enforcement personnel and informed them of the plot. Moreover, the fact that the Informant never intended to carry out his role in the plot does not absolve the defendant from coming dangerously close to causing the death of Jacobs (Penal Law § 110.10) nor does any claim that the defendant might yet have renounced the criminal venture. (See, People v Mahboubian, 74 NY2d 174, 190, supra; People v Sullivan, 173 NY 122, supra.) *405 The defendant did all that was necessary of him to complete the intended crime and would have been guilty of the completed crime if the surrounding circumstances had been as he believed them to be. (Penal Law § 110.10; People v Coleman, 74 NY2d 381; People v Trepanier, 84 AD2d 374, 378, supra.)
Accordingly, the court finds that the People presented sufficient evidence to the Grand Jury to sustain the charge of attempted murder in the first degree against the defendant under Penal Law §§ 110.00 and 125.27 (1) (a) (vi) (supra; People v Du Veau, 105 App Div 381, supra; see also, People v Mahboubian, supra; People v Gardner, 144 NY 119; People v Coleman, supra; People v Sanoguet, 157 Misc 2d 771, 777-779; People v Sullivan, 173 NY 122, supra; see also, People v Bush, 4 Hill 133) and, therefore, the defendant’s motion to dismiss count one of the indictment is denied.
Briefly stated, the case of People v Putnam (130 AD2d 52 [3d Dept 1987]), cited by the defendant in support of his motion to dismiss, is inconsistent with the decisions of the First and Fourth Departments in Du Veau and Trepanier (supra), respectively, and this court is not inclined to follow it.
3. Pleading of Count Three of the Indictment
The defendant contends that count three of the indictment, charging the defendant with criminal solicitation, is improperly pleaded and must be dismissed due to lack of specificity. In response, the People contend that this count of the indictment, as supplemented by the bill of particulars, indicates that a single act of solicitation occurred during the period between July 1996 and November 1996 and that this four-month period is sufficiently specific to permit the defendant to prepare his defense. The People further state in the bill of particulars that they “have subpoenaed various records in an effort to be more specific as to the date of occurrence * * * [and that] [I]f these records shed light on this issue, the People will inform the defendant at the earliest possible time.” The bill of particulars goes on to state that the acts described in the indictment are alleged to have occurred (i) at the defendant’s place of business; (ii) in the vicinity of his home; and (iii) in telephone conversations to the defendant’s place of business and to his home.
The purpose of an indictment is to provide an accused with fair notice of the nature of the charges and the time and place of the conduct, so as to enable the defendant to prepare an adequate defense. (People v Keindl, 68 NY2d 410.) An indictment *406 need not always set forth the actual date of the crime charged or name the victim for each count alleged. (People v Sanchez, 84 NY2d 440.) Where the indictment fails to adequately specify the details of the offense charged, a bill of particulars may supplement the indictment. (People v Price, 234 AD2d 978 [4th Dept 1996]; People v Rider, 115 AD2d 123, 125 [3d Dept 1985].) In situations “[w]hen time is not an essential element of an offense, the indictment, as supplemented by a bill of particulars, may allege the time in approximate terms.” (People v Watt, 81 NY2d 772, 774.) Notwithstanding the foregoing, however, the US and State Constitutions require an indictment to set forth a time interval which reasonably provides an accused with information regarding the nature and cause of the accusation, so that an accused can prepare a defense to the charges and use the judgment against further prosecution for the same crime. (People v Morris, 61 NY2d 290, 294; US Const 6th Amend; see also, NY Const, art I, § 6.) “The determination of whether sufficient specificity to adequately prepare a defense has been provided to a defendant by the indictment and the bill of particulars must be made on an ad hoc basis by considering all relevant circumstances.” (People v Morris, supra, at 295; People v Watt, supra.) No time span is per se unreasonable. (Supra.) A determination of whether any given time span is unreasonable must be predicated on all of the surrounding circumstances including, but not limited to, the length of the time span, the knowledge the People have or should have of the exact date or dates of the crime, the nature of the offense or offenses, and whether a criminal pattern exists. (Supra.)
In the case at bar, the bill of particulars states that count three of the indictment arises out of a single act of solicitation that occurred between July 1996 and November 1996. According to the People’s response, this single act of solicitation was the initial meeting between the defendant and the Informant at the defendant’s office, at which meeting the defendant allegedly inquired of the Informant whether he knew of anyone who could carry out a hit. Time is not an essential element of the crime of solicitation. The Grand Jury testimony reveals that the defendant was cognizant of the existence of some type of scheme to murder (or as the defendant appears to allege, threaten) another person and that the plot had continued for a lengthy period of time. As such, alibi will not be in issue in this case. Therefore, the exact date on which the defendant and the Informant had their first conversation is not crucial to the preparation by the defendant of a defense to the crime charged *407 in count three of the indictment. The four-month time span set forth in this count is sufficient to permit the defendant to prepare a defense to the charge and the People have stated that they have subpoenaed certain records in an effort to narrow the stated period further and will amend the bill of particulars accordingly.
Accordingly, the defendant’s motion to dismiss count three of the indictment is denied.
4. Motion to Dismiss Predicated Upon Lack of Corroboration of Informant’s Testimony
The defendant moves to dismiss the indictment based upon his contention that the People were required to corroborate the testimony of the Informant. The defendant alleges in his motion to dismiss that it is “our belief that Doe testified that he first agreed to participate in the scheme and only later decided to report it to the police” (defendant’s mem of law, at 13). No affidavit is provided by the defendant to support such claim.
The court’s in camera review of the Grand Jury testimony of the Informant leads it to conclude that the Informant had no intention of going through with the alleged murder plan from the time he was first contacted by the defendant, since he almost immediately contacted law enforcement personnel to inform them of the same.
CPL 60.22 (2) provides that an accomplice is:
“a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in:
“(a) The offense charged; or
“(b) An offense based upon the same or some of the same facts or conduct which constitute the offense charged.” (See also, People v Sweet, 78 NY2d 263, 265; People v Basch, 36 NY2d 154, 157; People v Young, 235 AD2d 441.) CPL 60.22 (1) prohibits a conviction “upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.” The question presented in the case at bar is whether the Informant is an accomplice.
The case of People v Gerenstein (179 AD2d 930 [3d Dept 1992], Iv denied 79 NY2d 1049) is almost directly on point with the case at bar regarding the issue of corroboration. In Gerenstein, the defendant approached a friend by the name of Michael Harden in early 1988 about a scheme to murder the *408 defendant’s ex-wife, in return for a sum of money. Harden initially assumed that the defendant’s requests were in jest, but when the requests became more urgent, Harden realized that he was serious about the plan. In early 1989, after another discussion with the defendant, Harden went to the police and tried to inform them of the defendant’s scheme. Initially the police did not believe him, so he went directly to the defendant’s ex-wife and convinced her that the defendant was planning to have her killed. The ex-wife attempted to have Harden immediately accompany her to the police station, but Harden refused. The next day, however, upon the advice of the ex-wife’s attorney, Harden contacted the District Attorney’s office, which put him in touch with the State Police. The State Police immediately commenced an investigation. Harden was instructed by the police to attempt to engage the defendant in conversation about the murder plot, so that the defendant could be recorded on tape. Harden made two telephone calls to the defendant and had two personal meetings with the defendant, which conversations were recorded. In the recording of one of the personal meetings, Harden requested $100 and a gun from the defendant, which requests were denied. The defendant told Harden that he did not want to discuss the job until it was done. Two days later, the police arranged a simulated crime scene at the defendant’s ex-wife’s home. Harden was instructed to telephone the defendant and tell him that his ex-wife had been killed and that he wanted to be paid. In the course of the conversation (just as in the testimony regarding the Recordings presented to the Grand Jury in the case at bar) the defendant repeatedly stated that he needed proof that the job was done before he would pay. Later that day, the police gave Harden a chain, a ring and an identification card belonging to the defendant’s ex-wife and sent him to the defendant’s place of business. Upon showing the foregoing items to the defendant, the defendant paid Harden $60 and told him that he did not want to know any of the details of the crime, because he wanted to be able to pass a lie detector test. The defendant was arrested and indicted for conspiracy in the second degree and criminal solicitation in the second degree.
In its decision in Gerenstein, the Appellate Division, Third Department, citing People v Basch (36 NY2d 154, 157, supra), held that based upon the foregoing facts, there “can be little question that Harden was not defendant’s accomplice as a matter of law since such a finding is only appropriate where the ‘undisputed evidence establishes that a witness is an accom *409 plice’ (People v Gerenstein, supra, at 933.) The Gerenstein Court reasoned that Harden testified that he never had any intention to kill the defendant’s ex-wife and when he realized that the defendant was serious about the plot he went to the police. In reaching its decision, the Gerenstein Court (quoting. People v White, 26 NY2d 276, 278) further held that “[a] witness may be stamped as an accomplice only if it is shown that the witness ‘ “took part in the preparation or perpetration of the crime with the intent to assist therein * * * or that the witness counseled, induced or encouraged the crime” ’ ” {supra, at 934).
Based upon the court’s in camera review of the Grand Jury testimony in the case at bar, the defendant allegedly first approached the Informant in the summer of 1996 about a friend who wanted someone killed and inquired about how much it would cost. Many months then went by until the Informant was contacted by the defendant, who again inquired about how much it would cost, identified the intended victim and paid the Informant $5,000. An additional $5,000 was paid approximately three weeks later. Upon receipt of the first payment, the Informant testified that he notified law enforcement authorities about the plot and then began working as a police informant, following police instructions. Therefore, the Informant’s actions do not fall within the parameters of GPL 60.22 (2).
Accordingly, based upon the facts of the case at bar, the court finds that the Informant is not an accomplice and his testimony before the Grand Jury does not require corroboration. (See, People v Stern, 226 AD2d 238.) Any assertion to the contrary by the defendant (i.e., that the Informant participated in the crime by waiting before contacting the police) is mere speculation. (See, People v Young, supra.) Therefore, the defendant’s motion to dismiss this count for lack of corroborative testimony is denied.
Assuming arguendo that the Informant was in fact an accomplice, the evidence set forth in the Recordings and the testimony before the Grand Jury of the arresting police officer provided sufficient corroboration. (People v Gerenstein, supra, at 934, n 1; People v Weaver, 157 AD2d 983, 985-986, Iv denied 76 NY2d 744; People v Stern, supra.)
[Portions of opinion omitted for purposes of publication.]

 While in both Trepanier and Du Veau (supra), the defendant had been present at the scene of the intended crime, a defendant’s presence or lack thereof should not alter his or her criminal liability. Since there exists no requirement that one must be found at the scene of a murder for one to be guilty of that crime, it should follow that one need not be present to be criminally liable for an attempt to commit such crime.