People v Case (2025 NY Slip Op 25287)

[*1]

People v Case

2025 NY Slip Op 25287

Decided on March 31, 2025

County Court, Columbia County

Howard, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 31, 2025
County Court, Columbia County

The People of the State of New York

againstAndrew Case, Defendant.

Ind. No. 70263-24

Cheryl Botts, Esq.Columbia County District Attorney's Office325 Columbia Street, Suite 260Hudson, New York 12534Attorney for the PeopleWilliam Sullivan, Esq.Sullivan Law Office109 South Warren Street, Suite 400Syracuse, New York 13202Attorneys for the Defendant

Michael C. Howard, J.

The defendant was charged by Indictment with attempted murder in the second degree, a class B violent felony in violation of Penal Law §§ 125.25(1), 110.00; attempted assault in the first degree, a class C violent felony in violation of Penal Law §§ 120.10(1), 110.00; criminal use of a firearm in the first degree, a class B violent felony in violation of Penal Law § 265.09(1)(a); and DWI, an unclassified misdemeanor in violation of VTL § 1192(3). The defendant now moves for various forms or relief, by notice of motion and affirmation dated February 9, 2025. The People oppose by affirmation dated February 20, 2025. The defendant filed a reply affirmation on February 27, 2025. 
The Court will address the defendant's prayers for relief in the order listed in the Notice of Motion.
I. Motion to Invalidate the People's Certificate of Compliance.
The defendant alleges, and the People concede, that all of the body worn camera footage was not turned over in automatic discovery until after the issue was raised in the instant omnibus motion, despite the People having certified compliance with CPL Article 245 on October 4, 2024. The People contend that the body worn camera footage was turned over as soon as the People were made aware of the omission; a supplemental certificate of compliance was filed February 13, 2025. 
The defendant argues that the body worn camera metadata, apparently known as "audit [*2]trails," must be turned over and, as of the date of the reply affirmation, have not yet been turned over. The People cite various cases in which trial courts determined that audit trails have no relevance to the crime, and may therefore be excluded from the automatic discovery required in CPL § 245.20 [FN1]
. See, e.g. People v. Larkin, 72 Misc 3d 663 (Kings County Supreme Court 2021). The defendant responds that the audit trails will provide a history of the actions taken to create, store, and edit the body worn camera footage.
Body worn camera footage is absolutely required to be turned over to the defense under Criminal Procedure Law §245.20(g), which requires disclosure of "all tapes or other electronic recordings..." While the law concerning disclosure of body worn camera audit trails has not yet been taken up by higher courts, this Court is persuaded by the reasoning in People v. Ballard, 82 Misc 3d 403 (Queens County Criminal Court 2023), which found that body worn camera audit trails are automatically discoverable pursuant to CPL §§245.20(1)(e), 245.20(1)(k), 245.20(1)(u)(i)(B). Ballard, 82 Misc 3d at 405. Body worn camera audit trails can contain notes of law enforcement officers, impeachment material, and electronically created or stored information obtained by law enforcement. Ballard, 82 Misc 3d at 412-413. Audit trails can reveal the record of actions taken by the officer operating the body worn camera, any changes to the data obtained through the body worn camera, notes appended to the data by law enforcement officers, and the way the data was handled or stored after its capture. People v. Champion, 81 Misc 3d 292, 295-296 (Criminal Court, New York County 2023); People v. Bresnan, 85 Misc 3d 280, 285-86 (Monroe County 2024). 
Criminal Procedure Law Article 245 does not create a "...rule of 'strict liability'; that is, the statute does not require or anticipate a 'perfect prosecutor.' On the other hand, the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence." People v. Bay, 41 NY3d 200, 212 (2023). Due diligence depends upon "the practicalities of the situation" and the "resources generally available" to the party charged with exercising due diligence. People v. Page, 115 AD3d 1067, 1068—69 (3d Dep't 2014). Factors to be considered in determining whether the People adequately complied with CPL Article 245 are: 
the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery. Bay, 41 NY3d at 212.The People state they requested discovery from all the New York State Police, the West Seneca Police Department and the Rye Police Department. This is a commendable effort in reaching out to far flung law enforcement agencies in an effort to meet discovery obligations. However, in their affirmation the People do not disclose whether any such request was made to the Columbia County Sheriff's Department. As the New York State Police was the arresting [*3]agency in this matter, it is unclear whether or not the People initially realized that the Columbia County Sheriffs Department was involved in the initial investigation and arrest of the defendant in Columbia County.
The People state that the discovery was voluminous, a statement the defense does not attempt to contradict. The Court agrees that there is a large amount of discovery material here. This is a multi jurisdictional case involving many different police agencies.
The next Bay factor is complexity. Here, there are multiple witnesses from a variety of jurisdictions to testify about the defendant's alleged plans, and local law enforcement to testify about the stop and search of defendant's vehicle, and multiple search warrants. This is in addition to a DWI refusal.
The missing body camera footage should have been obvious to the People, who, according to the defendant, only turned over one body worn camera recording until they were alerted to the issue. The People have not explained whether they believed there was only one law enforcement officer with a body worn camera, or perhaps whether they thought they had turned over multiple body worn camera files in the DEMS program.
The People's affirmation does offer a reason for the omission of body worn camera footage. The Sheriff's Department's videos were not linked to the case. If the data had been properly linked to the case, it would presumably be linked through the metadata which the People have argued should not be automatically discoverable.
The People argue that the failure to turn over the body worn camera evidence should have been brought to their attention by the defense, in order to quickly remedy the oversight, citing People v. Gonzalez, 83 Misc 3d 1240(A) (Kings County Criminal Court 2024). In Gonzalez, the People had listed a document on their certificate of compliance, but had not included it in their discovery dump to the defense. The defense in that case waited until the statutory speedy trial clock had run prior to bringing the omission to the People's attention. Here, by contrast, it is unclear whether the People listed the body worn camera videos in their certificate of compliance. Gonzalez is also distinguishable because no request has been made to dismiss this case due to speedy trial time violations. 
In weighing these considerations, and given the unsettled nature of the law, the People will not be sanctioned in any way for the omission of body worn camera audit trails in the discovery. The People are directed to promptly provide the body worn camera audit trails to the defense.
In consideration of the wide ranging jurisdiction and multiple police agencies involved, the People's certificate of compliance dated October 4, 2024 will not be invalidated at this time, as the People gave a reasonable excuse for the omission of some of body worn camera recordings. 
II. Motion for a Probable Cause Hearing
The defense submitted an affidavit from the defendant in support of a motion for a hearing to test the legality of the vehicle stop and subsequent search of his vehicle and cell phone at the roadside. In the affidavit he avers that he was driving his vehicle in which he had an expectation of privacy, that he was not committing a criminal offense, that he was abiding by the traffic rules, and that he did not exhibit indicia of impairment. The People counter that this [*4]sworn statement is insufficient to support the granting of a hearing under CPL § 710.60. 
A challenge to the propriety of a stop and search cannot rely on the bare allegation that the police discovered contraband or other evidence in a defendant's possession."A defendant must additionally assert that the search was not legally justified and there must be sufficient factual allegations to support that contention." People v. Burton, 6 NY3d 584, 590-591 (2006). Here, it appears the defendant denies wrongdoing, and states the police stopped and searched him, his vehicle and his cell phone without sufficient suspicion. Thereafter, "[w]hen the validity of a warrantless arrest is challenged, the presumption of probable cause disappears and the People bear the burden of coming forward with evidence showing that it was supported by probable cause." People v. Chaney, 253 AD2d 562, 562 (3d Dep't 1998). 
The Court is aware of the broad outlines of this case, as revealed by a review of the Grand Jury minutes. However, the People have not come forward in their opposition papers with any facts to justify the stop of defendant's vehicle. Neither have they denied the defense's allegations that a preliminary search was performed prior to the issuance of a warrant. "Automobile stops are lawful only when based on probable cause that a driver has committed a traffic violation; when based on a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime; or, when conducted pursuant to 'nonarbitrary, nondiscriminatory, uniform' highway traffic procedures." People v. Hinshaw, 35 NY3d 427, 430 (2020). 
A hearing will be scheduled to determine whether the vehicle stop and the subsequent search was justified by the requisite Debour level of suspicion, and whether the searches were supported by a warrant. 
III. Motion to Dismiss for Insufficiency of Evidence Before the Grand Jury
The defendant argues that the proof before the Grand Jury is insufficient to sustain the charges of attempted murder in the second degree, attempted assault in the first degree, and criminal use of a firearm in the first degree. The People oppose, stating that the evidence before the Grand Jury was sufficient under Criminal Procedure Law § 190.65. The People argue that the Grand Jury heard evidence that the defendant told various people his goal was to confront the victim, and use his weapons to injure or kill the victim, and that the defendant was on the road to complete his goal.
The People cite People v. Trepanier, 84 AD2d 374 (4th Dep't 1983), in which the Fourth Department found sufficient evidence before the Grand Jury to establish an attempted arson, where the defendant prepared a building so that his accomplice (who was in fact an undercover police officer) could break in and set the fire. Trepanier, 84 AD2d at 377. The Fourth Department stopped short of finding sufficient evidence for the attempted grand larceny charge, because absent a fire, the defendant there did not come "within dangerous proximity to the criminal end to be attained," i.e. making a fraudulent insurance claim. Trepanier, 84 AD2d at 380. 
The Court of Appeals has found culpability for attempted kidnaping in a case where the defendant approached a 10 year old girl 30 or 40 times to invite her to go to the movies, for ice cream at his apartment, and other types of "luring" offers. People v. Denson, 26 NY3d 179 (2015). There, the Court of Appeals found that given the defendant's history of sex offenses [*5]against children, the defendant "crossed the boundary where preparation ripens into punishable conduct." Denson, 26 NY3d at 191.
The Court of Appeals found an attempted use of a child in a sexual performance conviction was supported when "the defendant came dangerously near to commission of crimes when he arrived at the location of what he thought would be a sexual rendezvous with an underage boy." People v. Cano, 12 NY3d 876, 877 (2009)(Emphasis added). Conversely, the Third Department found insufficient evidence for an attempted criminal sexual act where a defendant "was not definitive about what he wanted to do" with a fictitious 14 year old girl, even after he arrived at the site of the anticipated sex abuse. People v. Hiedeman, 189 AD3d 1902, 1904-1905 (3d Dep't 2020). 
"Acts required to establish attempt culpability... are acts that tend to effect the substantive crime and demonstrate the nearness or immediacy of defendant's commission of the crime." People v. Lendof-Gonzalez, 36 NY2d 87, 96 (2020) (Emphasis added). Thus, a defendant who brought a loaded shotgun within 20 feet of a house, filled his pockets with slugs and "stood mere steps away from the property of his intended victims" is liable for attempted murder [FN2]
. People v. Naradzay, 11 NY3d 460, 467 (2008).
There is no precedent for a successful attempt prosecution where the defendant is arrested 100 miles away from the scene of the incipient crime. Defendant here was approximately 100 miles away from Yonkers. His threats of harm, as related to the Grand Jury, were vague and inconsistent. The Court cannot in good conscience find that the defendant was "dangerously close" to committing murder, or even assault, when he was two hours away by car from his supposed destination. 
The motion to dismiss the counts of attempted murder in the first degree and attempted assault in the first degree is granted, and the counts are dismissed. The charge of criminal use of a firearm in the first degree, as dependent on the other felonies, is also dismissed.
IV. Motion to Suppress Evidence Seized Pursuant to the Search of the Cell Phone
The defendant argues the warrant for defendant's cell phone is overbroad, citing Carpenter v. United States, 585 U.S. 296 (2018), People v. Perez, 72 Misc 3d 310 (Kings County Supreme Court 2021), and Riley v.California, 573 US 373 (2014). The defendant argues that the search warrant was overbroad, in that it directs the collection of "any and all data," including geolocation data. 
The People have not explicitly opposed this motion. The Court will reserve decision on this issue until the People have had an opportunity to provide their position. The People are directed to provide the Court with the search warrant application, under seal, for review by the Court, along with any additional material or information the People choose to provide within 10 days of the issuance of this decision.
V. Motion for Huntley Hearing
The Court will conduct a Huntley hearing (People v. Huntley, 15 NY2d 72 [1965]) to determine the admissibility at trial of defendant's statements to law enforcement. CPL §710.60(4). The Court notes the People's consent thereto.
The defendant's motion to preclude statements not noticed by the People pursuant to CPL § 710.30 is granted.
VI. Motion for Brady / Kyles / Giglio Material
The People are directed, to the extent they have not already done so, to furnish the defense with all material required to be disclosed under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, as well as CPL § 245.20(1)(k).
VII. Motion for Sandoval/Molineaux/Ventimiglia/CPL § 245.20(3) Hearing.
The Court will conduct a pretrial hearing in accordance with the authority of People v. Sandoval, 34 NY2d 371 (1974) to determine what, if any prior conviction the People can use to impeach the defendant's credibility. 
The Court will also determine whether the People are permitted to submit proof of uncharged bad acts to the finder of fact on their direct case pursuant to People v. Molineaux, 168 NY 264 (1901). The People are directed to provide the defendant and the Court with a summary of any uncharged acts they plan to present on their direct case.
VIII. Motion for Renewal of Motions
The Court will determine whether or not further motions are appropriate and timely on a case by case basis.
Dated: March 31, 2025Hudson, New YorkENTER:Michael C. Howard, J.C.C.

Footnotes

Footnote 1:CPL 245.20(1) "The prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy photograph and test, all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control..." (Emphasis added).

Footnote 2:It should be noted that two Justices of the Court of Appeals dissented in this matter, stating that the defendant was not holding the shotgun, did not approach the home of the victims, and was unsure of the location of his targets' home. "[H]is conduct had not gone to the extent of placing it in his power to commit the offense unless interrupted." Naradzay, 11 NY3d at 469.